*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0040P (6th Cir.)
File Name: 03a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PACCAR INC.,
　　　　　*Plaintiff-Appellee,*

　　　　*v.*

TELESCAN TECHNOLOGIES,
L.L.C.,
　　　　　*Defendant-Appellant.*

No. 00-2183

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-76199—Avern Cohn, Senior District Judge.

Argued: June 13, 2002

Decided and Filed: February 5, 2003

Before: SILER and MOORE, Circuit Judges; STAFFORD,
District Judge.

---

*The Honorable William H. Stafford, Jr., United States District Judge
for the Northern District of Florida, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Mary Massaron Ross, PLUNKETT & COONEY, Detroit, Michigan, for Appellant.  David C. Lundsgaard, GRAHAM & DUNN, Seattle, Washington, for Appellee. Paul A. Levy, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Amicus Curiae.  **ON BRIEF:** Mary Massaron Ross, PLUNKETT & COONEY, Detroit, Michigan, for Appellant.  David C. Lundsgaard, Douglas C. Berry, GRAHAM & DUNN, Seattle, Washington, for Appellee.  Paul A. Levy, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

SILER, Circuit Judge.  Defendant TeleScan Technologies, L.L.C. ("TeleScan") appeals the district court's preliminary injunction enjoining it from using plaintiff PACCAR Inc.'s ("PACCAR") trademarks "Peterbilt" and "Kenworth" in any of its Internet domain names and metatags.  The district court concluded that PACCAR demonstrated a strong likelihood of success on the merits of its claims for trademark infringement and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.  As set forth below, the preliminary injunction is AFFIRMED IN PART and VACATED IN PART and the case REMANDED for further proceedings.

**I.**

**A.  Factual Background**

Plaintiff PACCAR is a leading manufacturer of heavy trucks and truck parts under several trademarks, including the "Peterbilt" and "Kenworth" trademarks.  Peterbilt Motors Company and Kenworth Motor Truck Company, both divisions of PACCAR, have been manufacturing trucks under

preliminary injunction, TeleScan's failure to make this argument below is excused.

The district court did not conduct a separate analysis as to whether TeleScan's use of PACCAR's trademarks in the metatags of its web sites is likely to cause confusion among consumers regarding the origin or affiliation of the web sites. In light of the district court's failure to consider whether TeleScan's use of the "Peterbilt" and "Kenworth" marks in its metatags alone, without the inclusion of those marks in the domain names, creates a likelihood of confusion, we believe that the scope of the injunction is too broad.

### IV.

Because PACCAR demonstrated a strong likelihood of success on the merits of its trademark infringement claim based on TeleScan's use of the trademarks "Peterbilt" and "Kenworth" in its domain names, the district court did not abuse its discretion in granting the preliminary injunction. Accordingly, we AFFIRM the preliminary injunction as to the domain names. The injunction's prohibition on the use of PACCAR's trademarks in TeleScan's metatags, however, is VACATED, and the case is REMANDED for further consideration.

their respective names for over sixty years. PACCAR, which owns numerous U.S. Trademark Registrations for the "Peterbilt" and "Kenworth" trademarks, has invested substantial amounts of money in developing, marketing, and advertising those marks.

In addition to its manufacturing business, PACCAR administers a used truck locator service on its web site, www.paccar.com. This service permits consumers to search a database of used Peterbilt and Kenworth trucks available for sale from Peterbilt and Kenworth dealers. Consumers can search the database using twelve different fields, including model, year, and location.

Defendant TeleScan owns several web sites providing truck locator services. Using TeleScan's www.truckscan.com web site, consumers can search for new and used trucks either by viewing listings by dealer or by searching a database of participating dealers using eleven different search terms, including manufacturer, model, and year. Dealers pay a monthly charge to have their listings included in the database. Another TeleScan web site, www.telescanequipment.com, provides links to TeleScan's manufacturer-specific web sites, including www.peterbiltnewtrucks.com, www.peterbiltusedtrucks.com, www.peterbilttruckdealers.com, www.kenworthnewtrucks.com, www.kenworthusedtrucks.com, and www.kenworthtruckdealers.com. In addition to using the "Peterbilt" and "Kenworth" trademarks in its domain names,[1] TeleScan displays the marks in the wallpaper underlying the manufacturer-specific web sites in fonts similar to the distinctive fonts in PACCAR's trademarks (*i.e.*, cursive script for "Peterbilt" and block script for "Kenworth") and includes

---

[1] Every web site has a unique "domain name," an identifier analogous to a telephone number or street address. A domain name contains a second-level domain consisting of a term or series of terms, such as "peterbiltusedtrucks" or "kenworthtruckdealers," and a top-level domain typically describing the nature of the enterprise, such as ".com" (commercial) or ".edu" (educational). *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1044 (9th Cir. 1999).

the words "Peterbilt" and "Kenworth" in the sites' metatags.[2] The www.telescanequipment.com and manufacturer-specific web sites provide links to the www.truckscan.com database. Each manufacturer-specific web site contains the following disclaimer: "This web site provides a listing service for name brand products and has no affiliation with any manufacturer whose branded products are listed herein."[3]

By letter dated May 18, 1999, PACCAR asserted that TeleScan's use of its trademarks "Peterbilt" and "Kenworth" in TeleScan's domain names infringes upon PACCAR's trademark rights and demanded that TeleScan relinquish ownership of the domain names. In response, TeleScan acknowledged PACCAR's ownership of the trademarks "Peterbilt" and "Kenworth" but maintained that its use of the marks is a permissible generic fair use.

## B. Procedural History

In 1999, PACCAR brought an action under the Lanham Act and state law against TeleScan in the United States District Court for the Western District of Washington. The case was dismissed for lack of personal jurisdiction over TeleScan.

Subsequently, TeleScan brought a declaratory judgment action in the United States District Court for the Eastern District of Michigan, seeking a declaration that its activities do not infringe upon PACCAR's trademarks. TeleScan also claimed that PACCAR tortiously interfered with its business relationships relating to its web sites and Internet business.

---

[2] "A 'metatag' is a list of words hidden in a web site acting as an index or reference source identifying the content of the web site for search engines." J. Thomas McCarthy, *Trademarks and Unfair Competition* § 25:69 (4th ed.). Metatags have been "analogized to the subject index of a card catalog indicating the general subject of a book." *Id.*

[3] The www.truckscan.com web site is still in operation while the www.telescapequipment.com and manufacturer-specific web sites are no longer available.

other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127.

In holding that TeleScan's use of PACCAR's trademarks in its domain names constitutes trademark dilution, the district court engaged in a cursory analysis, relying primarily on the Ninth Circuit's decision in *Panavision International v. Toeppen, L.P.*, 141 F.3d 1316, 1326-27 (9th Cir. 1998). Neither TeleScan nor PACCAR devotes much of its argument on appeal to the dilution issue, concentrating instead on the infringement claim. Determining whether "the junior mark causes dilution of the distinctive quality of the senior mark" requires an analysis of ten nonexclusive factors. *See V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464, 476 (6th Cir. 2001) (internal quotation marks and alteration omitted). We need not engage in such an analysis, one which neither the parties nor the district court employed, as PACCAR's demonstration of a strong likelihood of success on merits of its trademark infringement claim is sufficient to sustain the preliminary injunction.

## C. Metatags

The district court's preliminary injunction enjoined TeleScan from using the "Peterbilt" and "Kenworth" trademarks not only in any domain name but also in any web page metatag. Both TeleScan and amicus curiae Public Citizen contend that the district court's injunction is too broad because the use of PACCAR's trademarks in TeleScan's metatags does not violate the Lanham Act.

PACCAR claims that TeleScan waived this argument by failing to argue to the district court that the use of the trademarks in its metatags should be viewed as a fair use or that the scope of the injunction was overbroad. Arguments that were not raised below may not be asserted on appeal. *See White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) ("This court will not decide issues or claims not litigated before the district court."). Because PACCAR did not request relief as to metatags in its motion for a

does not include words like "independent" or "unaffiliated" in its domain names to distinguish its web sites.[9]    Instead, TeleScan's domain names contain the marks "Peterbilt" and "Kenworth" unmodified, suggesting that PACCAR is associated with or sponsors the web sites.

### c.  First Sale

Finally, TeleScan relies on the "first sale" doctrine as a defense to PACCAR's trademark infringement claims.  The first sale doctrine applies when a purchaser "does no more than stock, display, and resell a producer's product under the producer's trademark." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995).  The first sale doctrine offers no defense when "the reseller used the trademark in a manner likely to cause the public to believe the reseller was part of the producer's authorized sales force or one of its franchisees." *Id*. Here, TeleScan's incorporation of PACCAR's trademarks in its domain names creates a likelihood of confusion as to the source or affiliation of the web sites  and goes beyond simply stocking, displaying, and reselling PACCAR's trucks.

## B.   Trademark Dilution

PACCAR alleges that TeleScan's use of the Peterbilt and Kenworth marks in its domain names dilutes PACCAR's trademarks in violation of § 43 of the Lanham Act, which provides, in relevant part, that "[t]he owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark."  15 U.S.C. § 1125(c)(1).  Dilution is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and

---

[9]Amicus curiae Public Citizen admitted at oral argument that the domain name  "www.independentpeterbilt.com" was possible.

PACCAR counterclaimed, alleging claims for trademark infringement, unfair competition, false designation of origin, and trademark dilution under the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a), (c); common law unfair competition and dilution; and violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 19.418 *et seq*.  The district court realigned the parties and ordered that the caption show PACCAR as plaintiff and TeleScan as defendant.

PACCAR then moved for preliminary injunctive relief under Fed. R. Civ. P. 65, seeking an order enjoining TeleScan from using domain names that incorporate PACCAR's trademarks and from using web sites that convey the impression that the sites are affiliated with or sponsored by PACCAR.  PACCAR also requested that TeleScan be required to transfer ownership of the domain names containing "Peterbilt" and "Kenworth" to PACCAR. TeleScan defended the motion on the grounds that it made a descriptive or fair use of PACCAR's trademarks.

In 2000, the district court granted PACCAR's motion for a preliminary injunction, concluding that PACCAR demonstrated a strong likelihood of success on its trademark infringement and trademark dilution claims.  It enjoined TeleScan from using its domain names containing "Peterbilt" or "Kenworth" and ordered TeleScan to transfer registration of those domain names to PACCAR.  In addition, it enjoined TeleScan from using the trademarks "Peterbilt" or "Kenworth" in any domain name or metatag and from using the trademarks on its web sites "in a way such that it is likely to cause confusion on the part of consumers that the web page is associated with PACCAR, Peterbilt or Kenworth, including the use of the trademarks as the title or as 'wallpaper' background of a web page."

TeleScan appealed from the preliminary injunction and moved this court for an order staying the injunction pending appeal.  The motion was denied.

## II.

We review the district court's decision to grant a preliminary injunction for abuse of discretion, according "great deference to the decision of the district court." *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). "The district court's determination will be disturbed only if [it] relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Id*.

When ruling on a motion for a preliminary injunction, the district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).[4] The only factor that TeleScan challenges on appeal is PACCAR's likelihood of success on the merits of its trademark infringement and dilution claims.

## III.

### A.   Trademark Infringement

### 1.   Likelihood of Confusion

PACCAR alleges that TeleScan's use of the "Peterbilt" and "Kenworth" marks in its domain names infringes on PACCAR's trademark rights in violation of § 32 of the Lanham Act, which provides a cause of action against "[a]

---

[4] TeleScan asserts that a movant bears a higher evidentiary burden when seeking a mandatory injunction requiring the nonmovant to take affirmative action such as the preliminary injunction issued here. We have rejected differing standards for mandatory and prohibitive injunctions. *United Food & Commerical Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998).

limited its use of PACCAR's trademarks to using the words "Peterbilt" and "Kenworth" on its web sites. TeleScan, however, included PACCAR's trademarks in its domain names, thereby describing its own products--its web sites.

In addition, TeleScan's use of PACCAR's trademarks does not satisfy the requirements of the nominative fair use analysis. To establish a nominative fair use defense, TeleScan must prove three elements: (1) PACCAR's product or service must be one not readily identifiable without use of its trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and (3) TeleScan must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by PACCAR. *Id.* Using PACCAR's trademarks in its domain names, repeating the marks in the main titles of the web sites and in the wallpaper underlying the web sites, and mimicking the distinctive fonts of the marks go beyond using the marks "as is reasonably necessary to identify" PACCAR's trucks, parts, and dealers. As discussed above, TeleScan's use of PACCAR's trademarks in its domain names creates a likelihood of confusion as to whether its web sites are affiliated with PACCAR.

In support of its assertion that its use of PACCAR's marks constitutes a fair nominative use, TeleScan cites *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), in which the Ninth Circuit affirmed a district court's holding that a repair service station unaffiliated with Volkswagen could refer to itself as "Independent Volkswagen Porsche Service." The *Volkswagenwerk* decision actually hurts TeleScan's argument. The court stated that the owner of the service station may advertise to the public that he repairs Volkswagen cars, but he "must not do so in a manner which is likely to suggest to his prospective customers that he is part of Volkswagen's organization of franchised dealers and repairmen." *Id.* at 352. The owner's "prominent use of the word 'Independent' whenever the terms 'Volkswagen' or 'VW' appeared in his advertising was sufficient to distinguish his business to the eye of the customer." *Id.* Here, TeleScan

911 F.2d 363, 365 n.2 (9th Cir. 1990) (holding that the fair use defense is available only so long as such use does not lead to customer confusion as to the source of the goods or services); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir. 1983) (stating that under the fair use defense, "anyone is free to use the term in its primary, descriptive sense so long as such use does not lead to customer confusion as to the source of the goods or services"); J. Thomas McCarthy, *Trademarks and Unfair Competition* § 11:47 (4th ed.) ("'[F]air use' should be viewed as merely one type of use which is not likely to cause confusion and hence is a 'defense' only in that sense. Because the paramount goal of the law of trademarks is to prevent likely confusion, a showing of likely confusion should trump a 'fair use.'"). *But see Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("Fair use is a defense to liability under the Lanham Act even if a defendant's conduct would otherwise constitute infringement of another's trademark.").

### b.   Nominative Fair Use

TeleScan also refers to "nominative fair use," a defense allowed by the Ninth Circuit in cases "where the defendant uses a trademark to describe the plaintiff's product, rather than its own." *New Kids on the Block v. New America Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). In such cases, the nominative fair use analysis replaces the eight-factor "likelihood of confusion" test. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). This circuit has never followed the nominative fair use analysis, always having applied the *Frisch's Restaurants* test. We are not inclined to adopt the Ninth Circuit's analysis here. Even if we were to do so, TeleScan's use of PACCAR's trademarks does not fall within the nominative fair use defense.

First, TeleScan claims that it used PACCAR's trademarks to refer to PACCAR's trucks, parts, and dealers and that this is the only way to describe PACCAR's brand name products and entities. TeleScan's argument would have merit if it had

person who . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1).

"The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In determining whether a "likelihood of confusion" exists, we examine eight factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). These factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores*, 109 F.3d at 280.

Whether there is a likelihood of confusion is a mixed question of fact and law. *Wynn Oil Co.*, 839 F.2d at 1186. Thus, we review for clear error the findings of fact supporting the existence of the "likelihood of confusion" factors but review *de novo* the legal question of whether those foundational facts constitute a likelihood of confusion. *Id.*

### a.   Domain Names as Source Identifiers

We first address TeleScan's argument, repeated throughout its briefs, that the district court improperly adopted a *per se* rule that domain names are always source identifying and did

not give adequate weight to the eight "likelihood of confusion" factors. TeleScan, however, mischaracterizes the district court's opinion. The district court did not adopt a *per se* rule that every domain name identifies the owner or affiliation of the site. Instead, the district court joined many other courts in stating the obvious: words in many domain names can and do communicate information as to the source or sponsor of the web site. *See, e.g.*, *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001) ("The domain name peta.org simply copies PETA's Mark, conveying the message that it is related to PETA."); *Brookfield Communications*, 174 F.3d at 1055, 1066 ("The domain name is more than a mere address: like trademarks, second-level domain names communicate information as to source. . . . When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship."); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998) ("We reject [the] premise that a domain name is nothing more than an address. A significant purpose of a domain name is to identify the entity that owns the web site."); *Cardservice Int'l, Inc. v. McGee,* 950 F. Supp. 737, 741 (E.D. Va.), *aff'd,* 129 F.3d 1258 (4th Cir.1997) ("[A] domain name is more than a mere internet address. It also identifies the internet site to those who reach it, much like ... a company's name identifies a specific company."). In fact, "customers who do not know what a company's domain name is will often guess that the domain name is the same as the company's name" or trademark. *Green Prods. Co. v. Independence Corn By-Prods. Co.*, 992 F. Supp. 1070, 1076-77 (N.D. Iowa 1997); *see also Brookfield*, 174 F.3d at 1044-45 ("Web users often assume, as a rule of thumb, that the domain name of a particular company will be the company name followed by '.com.' . . . Sometimes, a trademark is better known than the company itself, in which case a Web surfer may assume that the domain address will be 'trademark'.com."); *Panavision Int'l*, 141 F.3d at 1327 ("A customer who is unsure about a company's domain name will often guess that the domain name is also the company's name.").

of the museum's mark. The court stated that a critical question would be whether the defendant's use was "otherwise than as a [trade]mark." *Id*. at 756. The answer to that question would "essentially turn on whether consumers view the words, 'ROCK N' ROLL HALL OF FAME,' as a label for [the defendant's] photograph, or as an indicator that [the defendant's] photograph originated with or was sponsored by the Museum. *As always, the touchstone will be the likelihood of consumer confusion*." *Id*. (emphasis added).[7]

*Rock and Roll Hall of Fame* supports the district court's rejection of TeleScan's fair use defense. A consideration of the eight "likelihood of confusion" factors leads to the conclusion that TeleScan's use of PACCAR's trademarks in its domain names creates a strong likelihood of confusion regarding the source of the web sites. Based on the above-quoted language from *Rock and Roll Hall of Fame*, such a conclusion establishes that TeleScan used the marks "Peterbilt" and "Kenworth" as *trademarks*, precluding the fair use defense.[8] This is consistent with the view that a finding of a likelihood of confusion forecloses a fair use defense. *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*,

---

[7] The district court in *Rock and Roll Music Hall of Fame* found that the defendant's use of the museum's building design *and* the words, "ROCK N' ROLL HALL OF FAME," was likely to cause confusion. It did not consider whether use of the words alone would create a likelihood of confusion. *Id.* at 753.

[8] If we were to accept TeleScan's assertion that it used PACCAR's trademarks merely to describe or to refer to PACCAR's trucks, parts, and dealers, then the fair use defense is inapplicable for another reason. The fair use defense allows the use of a term to describe the defendant's goods or services, *not the plaintiff's. See Cairns v. Franklin Mint Co.*, Nos. 00-56217, 00-56796, 2002 WL 1333598, at *8 (9th Cir. June 19, 2002) ("[T]he classic fair use analysis is appropriate where a defendant has used the plaintiff's mark *only* to describe his own product, *and not at all to describe the plaintiff's product*."). According to TeleScan, it used PACCAR's marks to describe PACCAR's products; therefore, the defense does not apply.

TeleScan's argument distracts from the key issue here: whether TeleScan's use of the "Peterbilt" and "Kenworth" trademarks in its domain names is likely to cause confusion among consumers regarding the source or sponsorship of the web sites. In making that determination, the district court properly considered each of the eight *Frisch's Restaurants* factors.

#### b. Sufficiency of the Factual Record

According to TeleScan, the factual record is insufficient to support a finding of likelihood of success on the merits of PACCAR's trademark infringement claim. Citing *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620 (6th Cir. 1998), TeleScan asserts that this court has been quick to reverse a district court's injunction in a trademark infringement case on the basis of the record presented. *Data Concepts*, however, involved the entry of summary judgment and *permanent* injunctive relief; TeleScan appeals a *preliminary* injunction. We have recognized that the district court, upon a motion for preliminary injunction, "must make a decision based upon incomplete factual findings and legal research. Even so, that decision is generally accorded a great deal of deference on appellate review." *Blue Cross & Blue Shield Mut.*, 110 F.3d at 333 (internal quotation marks omitted).[5]

#### c. Eight "Likelihood of Confusion" Factors

##### i. Strength of PACCAR's Marks

The district court found that "Peterbilt" and "Kenworth" "are very strong marks which have been used nationwide to indicate a certain manufacturer of trucks for decades." Both marks were derived from a variation of the names of the original owners and fall into the category of fanciful marks.

---

[5] Many of the factual findings that TeleScan claims were inadequately supported by the record, such as how users search the Internet, are well established.

---

in the same field of providing used truck locator services via the Internet.

#### d. Conclusion

The Ninth Circuit has held that in the Internet context, similarity of the marks, relatedness of the goods or services, and simultaneous use of the Internet as a marketing channel are the three most important factors in finding a likelihood of confusion. *GoTo.com v. Walt Disney Corp.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *Brookfield*, 174 F.3d at 1034 n.16). Here, TeleScan's domain names are very similar to PACCAR's marks. Both TeleScan and PACCAR offer used truck locator services via the Internet. Consideration of these three factors, as well as the other five, compels the conclusion that PACCAR has demonstrated a likelihood of confusion and thus a strong likelihood of success on the merits of its trademark infringement claim.

#### 2. TeleScan's Defenses

In its defense, TeleScan uses the terms "fair use," "nominative fair use," and "first sale" interchangeably. As these are distinct concepts, we will address them separately.

##### a. Fair Use

The "fair use" defense permits a party's use, "otherwise than as a mark," of a term "which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4). TeleScan argues that the domain names containing PACCAR's trademarks truthfully identify the trucks available through its web sites and that this use is a descriptive or fair use.

In support of this argument, TeleScan relies on *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749 (6th Cir. 1998). In *Rock and Roll Hall of Fame*, this court vacated a preliminary injunction, in part because the defendant's use of the words "Rock and Roll Hall of Fame" in his photograph of the museum might constitute a fair use

"A 'fanciful' mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned (*e.g.,* Exxon, Kodak)." *Little Caesar Enters. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987). Fanciful marks are "the strongest and most distinctive." *Daddy's Junky Music Stores*, 109 F.3d at 280. "The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Id.* TeleScan does not dispute that "Peterbilt" and "Kenworth" are strong marks entitled to protection.

### ii.    Relatedness of Goods and Services

The district court found that the goods and services provided by PACCAR and TeleScan are closely related. We have identified three categories regarding the relatedness of goods and services:

> First, if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely.

*Daddy's Junky Music Stores*, 109 F.3d at 282. This case fits into the first and second categories. First, both TeleScan and PACCAR offer a used truck locator database on the Internet. Second, even if PACCAR did not offer a used truck locator database, TeleScan provides services related to PACCAR's products–locating new and used Peterbilt and Kenworth trucks for sale via the Internet. TeleScan does not dispute that its and PACCAR's goods and services are closely related.

### iii.    Similarity of Marks

Finding that TeleScan's domain names are very similar to PACCAR's marks, the district court noted that each domain name contains an exact character match to either the "Peterbilt" or "Kenworth" mark (*e.g.,*

with or identical to the other party."); *see also Induct-O-Matic Corp.*, 747 F.2d at 364-65 ("Being skilled in their own art does not necessarily preclude their mistaking one trademark for another when the marks are as similar as those here in issue, and cover merchandise in the same general field.") (citation omitted).

### vii.    TeleScan's Intent

TeleScan contends that the district court rejected the record evidence that its intent was not to deceive but to insure that its web sites could be readily located by customers and dealers looking for information on Peterbilt and Kenworth trucks. TeleScan, however, cites no evidence on this point other than its bald assertions of lack of intent. Regardless, "[t]he lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source." *Daddy's Junky Music Stores*, 109 F.3d at 287 ("Intent . . . is an issue whose resolution may benefit only the cause of a senior user, not of an alleged infringer.").

"Direct evidence of intentional copying is not necessary to prove intent." *Id*. at 286. There are two reasons for inferring intent here. First, "the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." *Id.* TeleScan knew that the "Peterbilt" and "Kenworth" marks were associated with trucks manufactured by PACCAR and used the marks in its domain names so that dealers and other customers could easily access its web sites to find Peterbilt and Kenworth trucks. Second, the nature of TeleScan's use of the marks on its web sites, such as including the marks in its domain names, repeating the marks in watermarks, and mimicking the distinctive scripts of the marks, indicates an intent to create the impression that the web sites are sponsored by or affiliated with PACCAR.

### viii.    Expansion into Product Lines

The parties agree, as did the district court, that this factor is irrelevant because TeleScan and PACCAR already compete

First, it claims that the district court failed to give any weight to TeleScan's argument that truck buyers are sophisticated purchasers. We have recognized that:

[g]enerally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion.

*Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991). TeleScan asserts that the heavy trucks manufactured by PACCAR are expensive and would be purchased ordinarily by a sophisticated buyer, indicating a lesser likelihood of confusion.

Second, TeleScan contends that even if Internet users do not engage in a sophisticated analysis to find a particular site, they learn not to tarry long at sites that do not supply the information they seek. PACCAR responds that even though an Internet user may not tarry long, an infringing domain name leads to initial interest confusion when the user is misdirected to the wrong site. *See Brookfield*, 174 F.3d at 1062. Initial interest confusion "afflicts sophisticated Internet users no less than it does unsophisticated users." *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 190 (W.D.N.Y. 2000).

The district court's finding regarding customer care in the Internet context is not clearly erroneous. In any event, if marks are similar, as they are here, "then purchaser care will decrease the likelihood of confusion only minimally." *Daddy's Junky Music Stores*, 109 F.3d at 286 ("That is, confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [product] he is buying to assume nonetheless that the seller is affiliated

www.peterbiltnewtrucks.com, www.kenworthusedtrucks.com) and that the addition of characters following the mark does not eliminate the likelihood of confusion. TeleScan asserts that the district court engaged in a side-by-side comparison with no consideration of the likelihood of confusion within the factual context of this case.

"When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *Daddy's Junky Music Stores*, 109 F.3d at 283. A side-by-side comparison is not the test; rather, "the marks must be viewed in their entirety and in context [and a] court must determine, in light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented." *Data Concepts*, 150 F.3d at 626.

Excluding the generic or common descriptive words following the mark such as "trucks" and "dealers," *see Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 363 (6th Cir. 1984) (stating that descriptive letters, syllables, or phrases are not considered in determining whether two marks are similar), each domain name contains an exact character match to either the "Peterbilt" or "Kenworth" mark. In addition, TeleScan's domain names and the marks are pronounced the same. Consideration of the marks in the Internet context further supports the district court's finding that TeleScan's domain names and PACCAR's trademarks are similar. Because all domain names appear in the same font and in all lower case letters, TeleScan's domain names such as www.peterbiltnewtrucks.com and www.kenworthnewtrucks.com have the same appearance as PACCAR's domain names www.peterbilt.com and www.kenworth.com.

#### iv. Actual Confusion

While conceding that the absence of any evidence showing actual confusion is not dispositive, TeleScan argues that the district court erred by giving that absence no weight whatsoever. The district court properly noted the absence of actual confusion evidence and applied this court's rule that

while such evidence is the best evidence of likelihood of confusion, the absence of actual confusion evidence is inconsequential. *See Data Concepts*, 150 F.3d at 626 ("[T]he lack of evidence of actual confusion is not significant unless the circumstances indicated that such evidence should have been available.").

### v.    Marketing Channels

The district court found that both PACCAR and TeleScan market their goods and services through the Internet, a marketing channel that increases the likelihood of confusion between the two marks. TeleScan agrees that both parties operate locator services for Peterbilt and Kenworth trucks over the Internet but asserts that there was little record proof regarding the impact of the Internet market as opposed to brick-and-mortar stores. In *Brookfield*, the Ninth Circuit explained why simultaneous use of the Internet as a marketing tool exacerbates the likelihood of confusion:

> In the Internet context, in particular, entering a web site takes little effort--usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership.

*Brookfield*, 174 F.3d at 1057. Even in the absence of proof regarding Internet marketing's effect on consumer confusion, the district court's finding that using the Internet as a marketing channel increases the likelihood of confusion is not clearly erroneous.

TeleScan also contends that the district court erred in discounting the disclaimer included on its web sites. The district court found that TeleScan's disclaimer does not remedy the confusion caused by the use of PACCAR's trademarks in its domain names. An infringing domain name has the potential to misdirect consumers as they search for web sites associated with the owner of a trademark. A disclaimer disavowing affiliation with the trademark owner

read by a consumer after reaching the web site comes too late. This "initial interest confusion" is recognized as an infringement under the Lanham Act. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000) ("Such confusion, which is actionable under the Lanham Act, occurs when a consumer is lured to a product by its similarity to a known mark, even though the consumer realizes the true identity and origin of the product before consummating a purchase."); *Brookfield*, 174 F.3d at 1062 ("[T]he use of another's trademark in a manner calculated 'to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement.'"); *Green Prods. Co.*, 992 F. Supp. at 1077 ("Due to the nature of Internet use, defendant's appropriation of plaintiff[']s mark as a domain name and home page address cannot adequately be remedied by a disclaimer. Defendant's domain name and home page address are external labels that, on their face, cause confusion among Internet users and may cause Internet users who seek plaintiff[']s web site to expend time and energy accessing defendant's web site.").[6]

### vi.    Customer Care

The district court found that the relevant customer is an average Internet user and that the confusion caused by an infringing domain name results because "Internet users do not undergo a highly sophisticated analysis when searching for domain names." (quoting *Green Prods. Co.*, 992 F. Supp. at 1079). TeleScan contends that the district court's analysis is flawed in two respects.

---

[6]PACCAR asserts that TeleScan's disclaimer is ineffective without consideration of initial interest confusion. First, the disclaimer is unobtrusive, relatively small, and contained in fine print associated with technical information about the web site designer. Second, TeleScan's use of the words "Peterbilt" and "Kenworth," including the incorporation of the marks in the domain names, the repetition of the marks in the wallpaper, and the use of distinctive scripts, was designed to maximize the illusion of affiliation and prevents the disclaimer from effectively informing consumers that the site is not affiliated with PACCAR.