**MARKET MASTERS, INC., d/b/a Dental Direct Services, a Michigan corporation, Plaintiff–Appellee,**

v.

**CLINICIAN'S CHOICE DENTAL PRODUCTS, INC., a Canadian corporation, Defendant–Appellant.**

No. 02–2383.

United States Court of Appeals, Sixth Circuit.

May 25, 2004.

---

[*] The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

Graham K. Crabtree, Mark R. Fox, Thaddeus E. Morgan, Fraser, Trebilcock, Davis & Dunlap, Lansing, MI, for Plaintiff–Appellee.

Richard A. Gaffin, Catherine T. Dobrowitsky, Miller, Canfield, Paddock & Stone, Grand Rapids, MI, for Defendant–Appellant.

Before KENNEDY, MARTIN, and ROGERS, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant/Counter–Claimant Clinician's Choice Dental Products, Inc. ("CCDP") appeals a district court order denying its motion for Preliminary Injunction against Plaintiff Market Masters, Inc. ("MM") in this trademark and trade dress infringement case involving dental impression trays. Because we find no abuse of discretion on the part of the district court in the weighing of the evidence or in the application of the relevant legal standards, we **AFFIRM.**

## BACKGROUND

MM alleged that it began to manufacture its Tri–Bite dental impression trays in 1987. These trays were initially manufactured in plastic, and later manufactured in metal. On December 18, 1990, the United States Patent and Trademark Office ("USPTO") granted trademark number 1,628,177 to MM's mark "TRI–BITE" for use in referring to MM's trays. CCDP allegedly began marketing a similar dental impression tray[1] in 1999 under the unregistered mark of "Quad–Tray." CCDP, on the other hand, alleged that it began using the "QUAD–TRAY" mark as well as the "QUAD–TRAY & Design" mark in 1994 in its promotional documents.[2] CCDP also alleged that it currently has ownership of

---

1.  The Quad–Tray dental impression tray trade dress is described in the Counterclaim, ¶ 87: [It] consists of a single unitary body having a brushed metallic, silver-colored, clean, sharp, clinical, modern appearance, the single unitary body comprising a handle and an impression material support section; a notch-denoted, tubular bend, slightly offset the midway point of said single unitary body and clearly differentiating the handle from the impression material support section; a relatively thick arcuate part on the impression material support section; a gau-zy material extended across the width of the impression material support section, supported by each of the arms of said impression material support section but not by the arcuate part of the impression material support section; and a relatively flat, tear-shaped, clockwise-bent, hook-type handle. J.A. at 63.

2.  CCDP also provided the district court with copies of its 1998 and 2002–2003 catalogs, showing the use of the marks in those years.

the referenced trademarks and two applications for federal registration of the marks are pending as U.S. Trademark Applications 76/306.316 and 76/345.583.

CCDP alleged that its business traces back to 1985 through its predecessor Canadian Company, Clinical Research Publications, that was in the business of distributing books and videos about various dental techniques. In 1985, this business began to operate under the name of Clinical Research Dental Supplies & Services, Inc. It later began to offer clinically tested dental products under the name "Clinician's Choice Dental Products, Inc." In 1994. CCDP began marketing and promoting its Quad–Tray dental trays, which, according to CCDP, are "dentistry's first and only totally disposable, dead-soft, double-arch impression tray."[3] CCDP claims that the tray is crucially important for the fabrication of prosthetic teeth (i.e., crowns, bridges, dentures, inlays, onlays, and porcelain veneers) and that without a quality tray, it is difficult to obtain a good impression of a tooth (thereby, causing difficulties in the creation a good prosthesis). According to CCDP, until it created its Quad–Tray, dentists used dual-arch impression trays that created distortions in impressions. The Quad–Tray, allegedly, improved upon the design flaws of its predecessors in the following manner: (1) it is not subject to bending like plastic trays; (2) its sidewalls are lower and do not interfere with the patient's bite; and (3) it avoids the narrow arch-width in some plastic trays. According to CCDP. the bad impressions that resulted from the previously popular trays often caused dentists to waste time in fitting prostheses or caused second orders for prostheses, at costs between $40 and $500 per tooth. CCDP estimates that it has sold an average of 500,000 trays per year and expects to sell 1.5 million trays in 2002, representing over $2 million in sales. It also alleges that MM began copying CCDP's trade dress[4] in 2001 without CCDP's consent.

On October 24, 2001, CCDP, through counsel, wrote to MM and threatened legal action for trademark infringement if MM did not cease and desist from the sale of its Tri–Bite trays. On November 23, 2001, MM, through its counsel, answered and indicated that MM's counsel had reviewed the demand and concluded that there was no trademark infringement. Later that day. CCDP's counsel wrote a reply letter, expressing his disagreement with MM's counsel's conclusion. On February 7, 2002, CCDP's counsel wrote another letter to MM's counsel, threatening legal action if particular demands were not met.

In response, MM filed a complaint (1) seeking a declaratory judgment that it has not infringed CCDP's trademark or trade dress, and, in the alternative, (2) seeking an injunction and damages for CCDP's infringement of MM's trademark and trade dress. CCDP's violation of the anti-competition provisions of the Lanham Act, 15 U.S.C. § 1125(a), and CCDP's violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq* ("MCPA"). CCDP filed a counterclaim (together with its Answer and Affirmative Defenses) requesting (1) a finding that MM's use of its trade dress infringes CCDP's trademark and constitutes unfair competition in violation of the Lanham Act

---

**3.** The trays are also recyclable and their disposable feature allegedly saves dentists significant time.

**4.** Trade dress refers to the image and overall appearance of a product, including its size, shape, color or color combinations, texture, or graphics. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 765 n. 1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

due to confusion as to product origin; (2) a finding that MM's use of its trade dress infringes CCDP's trade dress and constitutes unfair competition under the Lanham Act due to confusion as to product origin; (3) a finding of a common law trade dress violation against MM; (4) a finding of a trade dress violation under the MCPA; and (5) a finding of a copyright infringement as to MM's use of marketing materials.

CCDP also filed a motion for Preliminary Injunction. In ruling on the motion, the district court considered the affidavits, declarations, and exhibits filed by the parties.

Michael Emery, CCDP's Vice–President for finance (1) declared that CCDP began marketing of the Quad–Tray in 1994 and has continuously marketed it since that time; (2) attested to an extensive list of advertisements for the Quad–Tray and to other copies of CCDP's marketing materials; (3) indicated that his company has spent more than $1 million in marketing the Quad–Tray and has spent more than $450,000 in marketing "Clinician's Choice" as the source of the Quad–Tray; (4) indicated that the Quad–Tray generated over $3 million in sales at a unit price of $1.50 per tray; and (5) expected sales of $1.5 million in 2002. Peter Jordan. CCDP's founder and President. (1) attested to the basic history of the Quad–Tray marks and dress, (2) stated that MM became familiar with CCDP's product because two of MM"s employees attended a seminar offered by Jordan relating to Quad–Tray in Chicago, Illinois on February 23, 2001,[5] and that MM began marketing a metal version of its Tri–Bite trays approximately seven months later at an October 2001 meeting of the American Dental Association in Kansas City, Missouri; (3) indicated that the Tri–Bite trays are substantially similar to Quad–Trays in terms of their trade dress, leading to actual confusion for six of its consumers and a likelihood of a confusion for the rest; and (4) asserted that MM is offering to sell its Tri–Bite trays to the same consumers to whom CCDP markets, through the same marketing channels, and at the same price.

Stephen Rivet, MM's General Manager, stated that (1) MM has marketed and sold its Tri–Bite line of trays since 1987; (2) the "TRI–BITE" trademark was registered under USPTO Registration No. 1,628,177 in 1990; and (3) MM markets 99 percent of its trays through direct telephone orders from its customers, leaving no doubt about the trays' source. He also stated that MM has sought a manufacturer for a metal version of its sideless tray since 1987 because of customer inquiries and that it found such a manufacturer in Hoffman Stamping, Inc. of Williamston, Michigan.[6] Finally, Rivet attached a num-

---

5. CCDP filed the Declaration of Vincent Paradiso, the President of Millenium Dental International, to substantiate the claim that MM's employees were present at the Chicago seminar. Lisa Reed, MM's marketing manager and one of MM's employees that attended the Chicago seminar on February 23, 2001, confirmed that she attended the show but stated that she attended the show for the purpose of acquiring knowledge about the dental impression materials used and not the dental trays. She also indicated that she has no recollection of the trays discussed during the show and took no notes concerning the trays. She identified the second MM employee at that seminar as Linda Marado. Finally, Reed stated that MM had already begun limited production of its metal trays as of the date of the seminar.

6. MM submitted a Declaration of Frank Erdmeier, the President of Hoffman Stamping, Inc., who declared that (1) his company completed a preliminary drawing for the Tri–Bite metal trays on May 8, 2000; (2) the drawing was revised; (3) both the preliminary and the revised drawings were prepared by Andreas Mischo, an employee of his company, based

ber of exhibits to his Declaration showing (1) a design drawing for the metal tray,[7] which he dates as formulated in May 2000; (2) exemplars of the Tri–Bite plastic tray and Tri–Bite metal tray;[8] and (3) an exemplar of the Quad–Tray for comparison. Rivet identified the following differences between the Tri–Bite tray and the Quad–Tray: (1) the Tri–Bite tray is longer; (2) the Tri–Bite tray handle is triangular as opposed to tear-shaped; (3) the arms of the Tri–Bite tray's material support section are longer; (4) the arms of the Tri–Bite are flat as opposed to raised; (5) the Tri–Bite uses a gauzy material which is different in appearance and texture from the gauzy material used in the Quad–Tray; and (6) the color of the Tri–Bite tray is the natural color of aluminum and its appearance is modeled after the predecessor's plastic models.

The district court, after conducting a hearing at which it received offers of proof concerning the testimony of Jordan and Emery and at which Rivet was cross-examined, conducted a very thorough and thoughtful analysis, and denied CCDP's motion for a preliminary injunction. This appeal followed.

## STANDARD OF REVIEW

This court reviews the denial of a preliminary injunction for abuse of discretion, the legal conclusions leading to the denial *de novo,* and factual conclusions for clear error. *Sharpe v. Cureton,* 319 F.3d 259,

272 (6th Cir.2003). In a trade dress infringement case, the determination of functionality is a question of fact reviewed for clear error. *Esercizio v. Roberts,* 944 F.2d 1235, 1246 (6th Cir.1991).

## ANALYSIS

The Federal Trademark Act ("Act"), codified at 15 U.S.C. § 1051 *et seq.,* creates a civil cause of action for trademark and trade dress infringement. The Act also authorizes injunctive relief in such cases. 15 U.S.C. § 1116. In ruling on a motion for a preliminary injunction, the court must consider and balance the following four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *PACCAR, Inc. v. Telescan Techs., L.L.C.,* 319 F.3d 243, 249 (6th Cir.2003) (citing *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir.1998)).

The district court found that CCDP, the movant, failed to show a strong likelihood of success on the merits.[9] In so doing, it relied on the following three-part test articulated by this Court:

The Lanham Act's protection of registered trademarks also extends to unreg-

---

on specifications and an exemplar provided by MM; (4) he was not provided with any metal exemplar on which to prepare the product drawing; and (5) the parties entered into an agreement for the fabrication of metal dental impression trays on July 5, 2000.

7. The word "TRI–BITE" is prominently displayed on the handle of the metal tray.

8. Rivet indicated that the metal tray is similar to the plastic tray and that 65 percent of those

who have purchased the 16,000 metal trays which MM has sold previously purchased the plastic tray model.

9. It also found that the other three *PACCAR* factors weighed against CCDP. Since we find that CCDP failed to establish a likelihood of success on the merits, we do not address the district court's conclusion regarding these other three factors.

istered trade dress.... To recover for trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must prove by a preponderance of the evidence: (1) that its trade dress has obtained "secondary meaning" in the marketplace; (2) that the trade dress of the two competing products is confusingly similar; and (3) that the appropriated features of the trade dress are primarily non-functional.

*Gray v. Meijer, Inc.*, 295 F.3d 641, 645 (6th Cir.2002). The district court found, and, accordingly. CCDP does not dispute, that the first two elements of this test are met in this case. CCDP does object to the district court's finding that the appropriated features of the trade dress are primarily functional. We therefore turn our attention to this finding.[10]

The district court explained its finding as follows:

The Supreme Court has defined a functional feature as follows: "A design feature is functional if it is not 'merely an ornamental, incidental, or arbitrary aspect of the device' but rather 'essential to the use or purpose of the device or if it affects the cost or quality of the device.'" Defendant attempts to meet this element by listing all of the unique features of its product, many of which are non-functional. However. Defendant's analysis misses the point-that is, this analysis focuses only on those features which are misappropriated. The principal feature which makes Defendant's product stand out in terms of its trade dress is its manufacture from aluminum. It is the use of the aluminum which gives Defendant's product its desirable appearance and function, which is precisely why Plaintiff wanted to enter the

market to compete for these sales. The other unique features of Defendant's product, its notches, tear drop shape, *etc.*, are either insignificant, were not misappropriated by Plaintiff, or are also functional in character (*i.e.* related to the shape of a device needed to fit in one's mouth and over teeth).

Since the moving force here is the use of aluminum and those other functional features associated with the use of a mold, it is easy to conclude that the trade dress here is functional. The aluminum is used to give the product rigidity as well as its shiny and clean appearance. Though plastic trays may do well too, the use of the aluminum is central to this product's function and usefulness in the making of impressions. The use of the aluminum is also related to the relatively cheap cost of the product. Indeed, these conclusions are supported by Peter Jordan's own Declaration, which described his product in terms of its functionality and usefulness. Jordan's declaration reads much more like a patent application than an explanation of trade dress.

*Market Masters, Inc. v. Clinician's Choice Dental Prods., Inc.*, No. 5:02–CV–24, slip op. at 15–16 (W.D.Mich. Oct. 31, 2002). As stated above, the determination of functionality is a question of fact reviewed for clear error.

CCDP raises a number of challenges as it attempts to clear this high hurdle. First, it argues that the issuance of a design patent to Market Masters for the Tri–Bite product is presumptive proof of non-functionality. However, the case that CCDP cites for this proposition, *Krueger Int'l v. Nightingale, Inc.*, 915 F.Supp. 595, 604–605 (S.D.N.Y.1996), expressly stated that "[a] design patent is analytically dis-

---

**10.** We note that MM, in its brief, objected to the district court's finding regarding the first two elements on the grounds that no full

evidentiary hearing took place in this case. Because of our ultimate disposition of this case, we do not reach this question.

tinct from a protectable trade dress ... [a] design patent, therefore, can neither guarantee nor preclude a finding of protectable trade dress." The district court had before it the evidence concerning the design patent and nevertheless found that the trade dress was not entitled to protection. We find no clear error in that extremely fact-specific finding.

Second, CCDP argues that the district court erred by concentrating on the fact that the Quad–Tray was made out of aluminum. Instead, it argues that the important aspect of the tray's trade dress was its metallic, silver-colored, clean, clinical, and modern appearance. We disagree because we would expect that any dental instrument sold in the today's market would be "clean," "clinical," and "modern."[11] As for the "metallic" and "silver-colored" appearance, we find that they are merely incidental.

Third. CCDP argues that the district court erroneously failed to consider other misappropriated features which, it argues, comprise the Quad–Tray's non-functional trade dress. Having had the benefit of the very extensive descriptions of these two instruments by both parties and having looked at the photos of the two instruments, we simply conclude that the district court did not clearly err when it determined that the unique features of the dental impression trays were either functional, or undeserving of protection.

## CONCLUSION

For the reasons stated above, we affirm the district court's order denying CCDP's motion for a preliminary injunction.

11. We also question whether the protection that CCDP is seeking can be based on such amorphous terms.