NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 07a0611n.06
Filed: August 22, 2007

Nos. 05-5027, 05-6225, 05-6700, and 05-6739

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NACCO Materials Handling Group, Inc.　　）
d/b/a Yale Materials Handling Corp.　　　）
　　　　　　　　　　　　　　　　　　　　）
　　　Plaintiff-Appellant-Appellee,　　　　）
　　　　　　　　　　　　　　　　　　　　）　**ON APPEAL FROM THE UNITED**
v.　　　　　　　　　　　　　　　　　　　）　**STATES DISTRICT COURT FOR THE**
　　　　　　　　　　　　　　　　　　　　）　**MIDDLE DISTRICT OF TENNESSEE**
Toyota Materials Handling USA, Inc.　　　　）
and　　　　　　　　　　　　　　　　　　）
The Lilly Company　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）
Defendants-Appellees-Appellants.　　　　　）
────────────────────────　　　　）
　　　　　　　　　　　　　　　　　　　　）

BEFORE: ROGERS AND GRIFFIN, Circuit Judges; RUSSELL,[*] District Judge.

　　　**RUSSELL, District Judge.**　NACCO Materials Handling Group, Inc. d/b/a/ Yale Material

Handling Corporation (hereinafter "NACCO") initially sued Toyota Materials Handling USA, Inc.

(hereinafter "Toyota") for unlawful procurement of breach of NACCO and The Lilly Company's

(hereinafter "Lilly") dealer agreement, and applied to the trial court for a declaration clarifying the

terms of NACCO and Lilly's contract. As litigation progressed, NACCO sought to terminate its

contracts granting Lilly's Memphis and Nashville area dealerships before the contracts' terms

expired. Lilly moved to enjoin NACCO from prematurely terminating the contracts, and the trial

───────────────

[*]Hon. Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

court granted Lilly a preliminary injunction to that effect on November 23, 2004. NACCO planned not to renew either of Lilly's contracts when the terms expired. Lilly moved the trial court to enjoin NACCO from refusing to renew the contracts during the pendency of the litigation. On June 30, 2005, the trial court enjoined NACCO from terminating either contract on the date the term expired in an attempt to preserve the status quo while the trial court determined whether preliminary relief prohibiting nonrenewal was appropriate. On October 17, 2005, the trial court entered an Order granting Lilly an injunction to prevent the nonrenewal of the contract for the Nashville dealership, but declined to enjoin the nonrenewal of the Memphis dealership.

In Appeal Number 05-5027, NACCO appeals the propriety of the trial court's November 23, 2004, injunction. In Appeal Number 05-6225, NACCO appeals the propriety of the trial court's June 30, 2005, Order, particularly the court's decision to enter an injunction without considering NACCO's bond request. In Appeal Number 05-6700, Lilly appeals the trial court's October 17, 2005, decision to allow NACCO's nonrenewal of the Memphis dealership. In Appeal Number 05-6739, NACCO appeals the trial court's October 17, 2005, decision to enjoin NACCO from nonrenewal of Lilly's Nashville dealership.

## BACKGROUND

NACCO manufactures both Yale and Hyman forklifts. For over fifty years, Lilly has sold Yale brand forklifts. While Lilly did not always sell other brands of forklifts, it was not specifically bound to sell exclusively Yale forklifts by previous contracts. Lilly also operated a Yale forklift repair business. Lilly employed many experienced workers who specialized in the repair of Yale forklifts and ordered its repair parts from NACCO at a much lower price than it could obtain through

2

a general commercial supplier of Yale forklift parts. Generally, NACCO and Lilly renewed their previous contracts without significant alterations. In 1992, however, NACCO redrafted their contract and developed the Dealer Marketing Agreement (hereinafter "DMA"), the form of contract presented to new Yale dealers; NACCO did not require veteran Yale dealers to alter their contracts.

In 1996, Lilly had the opportunity to expand its dealership territory to include the Memphis region. NACCO granted Lilly the Memphis sales territory, and Lilly signed a DMA for that dealership in 2002. NACCO also asked Lilly to sign a nearly identical DMA governing the contract for Lilly's Nashville dealership. Lilly neither negotiated nor objected to the new contracts; instead, Lilly claims that it had no choice but to sign the agreement if it chose to expand its dealerships. Unlike the previous contracts between Lilly and NACCO, the DMAs for Lilly's Nashville and Memphis dealerships included a Best Efforts Provision, a Business Ethics Provision, and an Exclusivity Provision. The Best Efforts Provision, set out in Articles 3.4 and 3.14 of the DMA, required that Lilly "actively and effectively solicit[] and promot[e] on a regular and frequent basis all actual and potential customers in the Management Unit" and "actively develop, preserve and promote the goodwill and reputation of Yale, its goods and services." The Business Ethics Provision, articulated in Article 3.14 of the DMA, imposed a general requirement that Lilly "exercise good faith and honesty in its business dealings with Yale and third parties." The Exclusivity Provision of Article 3.15 of the DMA prohibited Lilly from "sell[ing] or offer[ing] for sale... new equipment which competes directly with Yale products" during the term of the DMAs.

Not all NACCO dealers were subject to the requirements of the DMAs signed by Lilly. Some veteran Yale dealers, like Lilly, originally opted not to sign a DMA. Other Yale dealers had recently contracted with NACCO, and were on course to becoming exclusive NACCO dealers. To ease the transition, NACCO specially negotiated contracts with these dealers allowing them to sell

3

forklifts and parts from Yale's competitors concurrent with their sale of Yale products for a limited period of time. One Yale dealer, Inslee McEntee, has sold both Yale and competing products throughout its decades-long relationship with Yale. NACCO manufactures and markets forklifts under the brand name of Hyster, in addition to its Yale forklifts. NACCO's policy regarding contracts to Hyster dealers does not require that the dealers refrain from selling competing brands of forklifts.

In 2003, Lilly found that a Toyota dealership in the Memphis area might be available for purchase. Between March, 2003, and July, 2003, Lilly engaged in discussions with Toyota representatives to take over the sales of Toyota forklifts in the Memphis region, in addition to operating their Yale dealership. In March, 2003, NACCO caught wind of Lilly's contact with Toyota and questioned whether Lilly was considering a contract with Toyota. Lilly did not tell NACCO of its contact with Toyota at that time. On July 3, 2003, NACCO again questioned Lilly about its relationship with Toyota. Again, Lilly did not disclose any information about its dealings with Toyota. On July 7, 2003, NACCO contacted Lilly, and Lilly assured Yale that it was not planning to become a Toyota dealer, even if it did purchase Toyota assets. On July 9, 2003, a letter of Intent to Purchase a Toyota forklift dealership was signed by Lilly. On July 21, 2003, representatives from Yale met with Lilly representatives to discuss Lilly's dealings with Toyota. At that time, Lilly disclosed that they had spoken with Toyota, but had made no decisions whether to purchase a Toyota dealership. NACCO warned Lilly that, if it signed a contract to become a Toyota dealer, it would be in breach of the DMA Exclusivity Provision and that NACCO would sue Lilly and its officers for estimated large sums of money. NACCO filed a brief Complaint against Lilly for breach of the DMA, which was removed to federal court in late July, 2003, but indicated it would dismiss the Complaint if Lilly did not pursue a relationship with Toyota. On August 1,

4

2003, Lilly officially signed a Dealership Agreement to sell Toyota forklifts in addition to Yale forklifts, and informed NACCO of its decision to become a Toyota dealer on July 31, 2003. Lilly was authorized to sell Toyota forklifts at a profit in areas of Arkansas, the entire state of Mississippi, and a region of Tennessee surrounding Memphis. On August 1, 2003, NACCO amended its Complaint in the action for a declaration of contract terms and unlawful procurement in breach of contract underlying the injunctions appealed here. The Complaint specifically alleged violations of the Exclusivity Provisions in the DMAs and the provisions in Article 3.14 of the DMA, specifically quoting the Best Efforts Provision. After NACCO instituted this suit and indicated that it would not renew the DMAs, Lilly became a dealer of Clark, Daewoo, and Linde forklifts, competitors of Yale, in the Knoxville, Tennessee, area. By January, 2004, Lilly had bifurcated its sales staff into Yale salespersons and salespersons for its other products in an effort to comply with the DMAs' Best Efforts Provision by specializing some staff members in Yale products.

NACCO also points out that Lilly may have breached the DMAs' Business Ethics Provisions before it signed a contract with Toyota. Lilly, in violation of the DMAs, sold Yale parts in Mexico, and continued making these sales despite NACCO's objections. Lilly also collected a sales incentive award from NACCO under false pretenses. Lilly received one hundred forklift trucks, purportedly for sale to AutoZone. This order qualified Lilly for a $28,000 sales incentive. The trucks, however, were never sold to AutoZone; yet Lilly kept the sales incentive.

The terms of the DMAs for Lilly's Nashville and Memphis dealerships expired on July 2, 2005. NACCO sought to terminate Lilly's dealership contracts before the terms had run because of breach of the contract's Exclusivity Provision. In particular, NACCO claimed that, as a dealer for a competing forklift brand, Lilly should no longer be privy to NACCO's marketing strategies for Yale forklifts. Furthermore, NACCO claimed that Lilly had violated the Best Efforts Provisions

5

of the DMAs by diverting sales staff and energy to the marketing of Toyota forklifts. Also, NACCO asserted that Lilly violated the Business Ethics clause of the DMA by failing to give NACCO full information of its negotiations with Toyota before the Toyota contract was signed. NACCO claimed that these breaches were so significant that NACCO should be allowed to terminate the contract before its term expired. On August 1, 2003, immediately after confirming Lilly's choice to become a Toyota dealer, NACCO sent Lilly a Notice of Termination.

Lilly sought a preliminary injunction to prevent the early termination of the DMAs. According to Lilly, any interruption of its right to sell Yale forklifts and repair forklifts using Yale parts would irreparably damage Lilly's business by alienating its customer base, dissipating its established goodwill, and making termination of experienced Yale forklift repair specialists necessary. On November 23, 2004, the trial court granted Lilly injunctive relief preventing NACCO from terminating the Memphis and Nashville DMAs before their set expiration dates. NACCO's appeal of that Order is before this panel in Appeal Number 05-5027. NACCO moved that Lilly should pay a bond on the preliminary injunction to protect NACCO if it is ultimately found that NACCO could have lawfully terminated or refused to renew Lilly's dealership. While Lilly responded to this motion, the trial court did not ultimately address the merits of NACCO's bond request in any later opinion or hearing.

NACCO also sent three nonrenewal notices to Lilly. NACCO stated in the notices that it would not renew the contract because of Lilly's choice to sell competing forklift brands in breach of the contract. NACCO also informed Lilly that it had good cause to refuse to renew the DMAs because of Lilly's breaches of the Business Ethics and Best Efforts clauses of the contracts. Lilly was given sixty days to cure any breaches of the DMA. Lilly again sought pretrial relief to enjoin NACCO from refusing to renew the contract on July 2, 2005, because the interruption of its business

6

in Yale products would cause irreparable damage. On June 30, 2005, the trial court had not yet made a final decision on Lilly's request for a preliminary injunction prohibiting nonrenewal. At that time, in an attempt to preserve the status quo, the trial court ordered that NACCO could neither renew nor terminate Lilly's DMAs until the court issued an opinion on Lilly's injunction request. Until that time, Lilly could continue selling Yale products as though the terms of the DMAs had not expired. In making this Order, the trial court did not publish any findings of fact or conclusions of law. The trial court did not explicitly consider whether the standards for injunctive relief had been met. The trial court also did not consider whether NACCO was entitled to a bond on any injunctive relief. Although the trial court did not label it so, NACCO contends that the June 30 Order constituted injunctive relief to Lilly, which did not preserve the status quo and extended the terms of DMAs well past their set expiration on July 1, 2005. Accordingly, NACCO appealed that Order for failure to comply with procedural requirements and grant a bond; that appeal is before this panel in Appeal Number 05-6225.

The trial court issued an opinion on October 17, 2005, partially granting Lilly's request for a preliminary injunction. At that time, the trial court enjoined NACCO from refusing to renew the DMA for Lilly's Nashville dealership during the pendency of the litigation. The trial court also found, however, that NACCO was free to decline renewal of the DMA allowing Lilly to operate its Memphis dealership. Lilly appeals the trial court's decision to allow NACCO to decline renewal of the Memphis DMA in Appeal Number 05-6700. NACCO appeals the trial court's decision to enjoin nonrenewal of the Nashville DMA in Appeal Number 05-6739. Furthermore, NACCO asserts throughout its appeals that it has suffered damages from the trial court's Orders previously enjoining NACCO from terminating or refusing to renew the DMA for Lilly's Nashville dealership.

7

According to NACCO, the trial court's refusal to consider the issuance of a bond failed to protect NACCO from these damages.

**ANALYSIS**

*1.    The trial court did not abuse its discretion in its November 23, 2004, Order granting Lilly injunctive relief prohibiting NACCO from terminating the Memphis and Nashville DMAs before their set expirations on July 2, 2005.*

    *a.    Standard of Review*

In deciding whether to grant a preliminary injunction, a trial court must consider

(1)  whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by issuance of the injunction.[2]

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).  *See also United Food and Commercial Workers Union, Local 1099 v. Sw. Ohio Regional Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998).   The District Court's "ultimate determination as to whether the four preliminary injunction [standards] weigh in favor of granting or denying preliminary injunctive relief" is reviewed for abuse of discretion. *Tumblebus*, 399 F.3d at 760.  *See also Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 461 (6th Cir. 2005); *PACCAR Inc. v. Telescan Techs., LLC*, 319 F.3d 243, 249 (6th Cir. 2003)(overruled on other grounds in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)).  The "preliminary question of whether a movant is likely to succeed

---

[2] NACCO suggests that Lilly's burden of proof is heightened in this matter because Lilly requests a mandatory injunction as opposed to a prohibitory injunction.  The *Tumblebus* standard is applicable here, regardless of whether the injunction should be labeled mandatory or prohibitory. "[T]he difference between mandatory and prohibitory injunctive relief does not warrant application of differing legal standards."  *United Food*, 163 F.3d at 348.

8

on the merits is a question of law," however, which the appellate court reviews *de novo*. *Tumblebus*, 399 F.3d at 760. Even so, none of the four factors are prerequisites to the entry of injunctive relief and must only be considered and balanced against each other. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003); *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001). The district court's determination should be disturbed only if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *PACCAR*, 319 F.3d at 249.

### b. Merits

Lilly argued that the early termination of its Nashville and Memphis DMAs would irreparably damage its business by harming its goodwill from an established Yale customer base and necessitating the termination of many specially trained Yale repair employees. Furthermore, Lilly argued that it was strongly likely to succeed in this case on the merits and that NACCO will not be injured by Lilly's continued operation as a Yale dealer during the pendency of the litigation. NACCO stated in its Notice of Termination that Lilly breached the Exclusivity, Best Efforts, and Business Ethics Provisions of the agreement, allowing the contract to be terminated. Furthermore, although NACCO only cited Lilly's conduct in selling Toyota products in the Memphis area as wrongful, NACCO claimed that the terms of the Nashville DMA were also violated by Lilly's conduct. According to NACCO, Lilly's breach of the Business Ethics Provision and Exclusivity Provision at its Memphis dealership permeated its relationship with NACCO, forcing NACCO to provide information to a dealer whom it cannot trust. NACCO claimed that any continued relationship with Lilly would cause irreparable harm by forcing NACCO to disclose marketing strategies to a dealer for its competitor.

### i. Likelihood of Success on the Merits

9

*A. Violation of the Exclusivity Provision*

The trial court found that Lilly would likely succeed on the merits in this matter. The first inquiry as to whether Lilly can succeed on this matter is whether they were given proper notice of NACCO's intended termination. NACCO must have properly notified Lilly of the reasons for termination and allowed Lilly the statutorily required time to cure any breaches. If notice of termination under the Exclusivity, Best Efforts, or Business Ethics Provisions was improper, or if Lilly properly cured within the statutorily required time after notice was given, then that Provision may not be used as a basis for NACCO's proper termination of Lilly's dealership rights, and Lilly will have shown its likelihood of success.

The applicable Tennessee statute states that

(a) No supplier, directly or through an officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a retail agreement without good cause. "Good cause" means failure by a retailer to comply with requirements imposed upon the retailer by the retail agreement if such requirements are not different from those imposed on other retailers similarly situated in [Tennessee]. In addition, good cause exists whenever:
(1) There has been a closeout on the sale of a substantial part of the retailer's assets related to the equipment business, or there has been a commencement of a dissolution or liquidation of the retailer;
(2) The retailer has changed its principal place of business or added additional locations without prior approval of the supplier, which shall not be unreasonably withheld;
(3) The retailer has substantially defaulted under a chattel mortgage or other security agreement between the retailer and the supplier, or there has been a revocation or discontinuance of a guarantee of a present or future obligation of the retailer to the supplier;
(4) The equipment retailer has failed to operate in the normal course of business for seven (7) consecutive days or has otherwise abandoned the business;
(5) The retailer has pleaded guilty to or has been convicted of a felony affecting the relationship between the retailer and the supplier; or
(6) The retailer transfers an interest in the dealership, or a person with a substantial interest in the ownership or control of the dealership, including an individual proprietor, partner or major shareholder, withdraws from the dealership or dies, or a substantial reduction occurs in the interest of a partner or major shareholder in the

10

dealership. However, good cause does not exist if the supplier consents to an action described in this subsection.

Tenn. Code Ann. § 47-25-1302(a). NACCO contends that it has good cause to terminate Lilly as a dealer because of its alleged violation of the DMAs. If proven, this would constitute "good cause" as defined in the main body of Section (a) of the statute, not one of the specific instances of good cause set forth in Sections (a)(1) through (a)(6).

The statute also requires that

(b) Except as otherwise provided herein, a supplier shall provide a retailer with at least ninety (90) days' written notice of termination, cancellation or nonrenewal of the retail agreement and a sixty-day right to cure the deficiency. If the deficiency is cured within the alotted time, the notice is void.... The notice shall state all reasons constituting good cause for action. The notice is not required if the reason for termination, cancellation or nonrenewal is a violation under the provisions of subsection (a).

Tenn. Code Ann. § 47-25-1302(b).

NACCO proposes that the statute does not require that NACCO give any notice to Lilly of the termination because NACCO bases the termination on "good cause" as set out in the main body of Section (a). At first blush, NACCO's interpretation clearly seems correct, since Section (b) does not require a supplier to provide notice if the reason for termination is set forth under Section (a). Closer examination reveals, however, that this straightforward interpretation of the statute, as espoused by the trial court, leads to an absurd result.[3]

Taken at its plain meaning, the Tennessee statute declares several points of law:

(1) That a supplier may only terminate for good cause;

(2) That good cause is established either by a retailer's failure to comply with the terms of the contract or by one of the situations described in (a)(1) through (a)(6);

---

[3]Tennessee Courts have not yet encountered and interpreted this nuance of the notice provision.

11

(3) That a supplier is generally required to provide notice setting forth the reasons constituting good cause.; and

(4) That if the supplier bases termination on the "*provisions of subsection (a)*" no notice is required describing good cause.

Section (a) seems to restrict reasons for termination to the defined instances of "good cause" explicitly set forth. It is not apparent that the Tennessee legislature intended to allow suppliers to terminate dealership agreements for reasons not specified in the statute. If the Court again takes the statute at its plain meaning and considers that all definitions of "good cause" are set forth within the "provisions of subsection (a)," then notice is never required for proper termination or nonrenewal by a supplier. This makes the first part of Section (b) regarding notice and cure meaningless, since it would be impossible for a supplier to list the reasons constituting "good cause" in a required notice when the supplier seeks termination for a reason outside the constraints of "good cause" defined in Section (a).

The Court resolves this inconsistency by interpreting the Section (b) phrase "provisions of subsection (a)" to mean only the specific situations set forth in Sections (a)(1) through (a)(6). Thus, no notice is required for a supplier terminating a dealer for one of the specific listed scenarios, but a supplier must still provide a dealer ninety days notice before termination under the general definition of notice set forth in the body of Section (a). The notice must then "state all reasons constituting good cause" and these reasons must relate to "failure by a retailer to comply with requirements imposed upon the retailer by the retail agreement."[4] Because NACCO sought to

_____

[4] The Court can imagine two other ways to consistently interpret the statute. First, it is possible that Section (a) does not set forth all possibilities which might constitute "good cause." The Court rejects this interpretation because the general definition of "good cause" in Section (a) is already broad, and the detailed description of good cause set forth in (a)(1) through (a)(6) indicate that

12

terminate Lilly under three provisions of the DMAs, ninety days notice of a violation of each provision and sixty days for Lilly to cure were required before NACCO could use the Best Efforts, Business Ethics, or Exclusivity Provisions as bases for termination.

However, the fact that NACCO was required to provide notice to Lilly does not itself extablish Lilly's likelihood of success because NACCO had notified Lilly of possible termination due to a breach of the Exclusivity Provision set out in Article 3.15 of the DMAs at least as early as the July 29, 2003. By signing the contract with Toyota on August 1, 2003, and continuously remaining a Toyota dealer, it is clear that Lilly did not cure any alleged violation of the Exclusivity Provision within sixty days of the notice. Therefore, Lilly cannot establish a likelihood of success based on a failure of notice.

The district court nonetheless found that Lilly was entitled to a preliminary injunction, even though Lilly did seemingly violate the terms of the Exclusivity Provision in the Memphis DMA. The trial court found that the Exclusivity Provision was unenforceable. Under Tennessee law, a supplier may not "coerce a retailer into refusing to purchase equipment manufactured by another supplier." Tenn. Code Ann. § 1304(3). Lilly could not waive the protections of Tennessee law by contract; any attempt to waive the protection against coerced exclusivity is null and void. Tenn. Code Ann. § 47-25-1313. A retailer is entitled to injunctive relief to protect it against a violation

---

Section (a) is exhaustive in defining "good cause." Second, the statute might be interpreted consistently by finding that no notice is required if termination is sought pursuant to the broad definition of "good cause" set forth in the body of Section (a), but that notice and cure is required if the supplier seeks to terminate the dealer pursuant to one of the situations in Sections (a)(1) through (a)(6). The Court also rejects this interpretation as illogical. Cure would be impossible for some of the scenarios set forth in Sections (a)(1) through (a)(6), such as a closeout sale of the business, conviction of a felony, or the death of major shareholder. Notice would therefore be ineffective. Additionally, because the definition of "good cause" set out in the body of Section (a) is general, notice of the specific facts constituting "good cause" are vital to a dealer attempting to cure.

of Title 47, Chapter 25, Part 13 of the Tennessee Code. Tenn. Code Ann. § 47-25-1311(b). The trial court found that NACCO coerced Lilly to refrain from serving as a Toyota dealer when it threatened to terminate Lilly as a dealer and file suit against Lilly and its officers for their breach of the Exclusivity Provision of the agreement. According to the trial court, NACCO's threat to sue Lilly's officers individually for millions of dollars, to potentially sue Lilly for nearly twenty-nine million dollars, and to terminate Lilly's Nashville dealership if Lilly became a Toyota dealer constituted unlawful coercion, not merely enforcement of the Exclusivity Provision. Therefore, the trial court found that NACCO could not rely on the Exclusivity Provision as good cause to terminate the DMAs with Lilly. The trial court also found that NACCO had presented no evidence that Lilly was in violation of the Best Efforts Provision of the DMAs at that time. Lastly, the trial court concluded that neither party had proved likely success on the merits as to the violation of the Business Ethics Provision of the DMAs. The court, citing the principle that a strong showing of irreparable harm balances out a lesser showing of likelihood of success on the merits, found Lilly had satisfied its burden. *See United States v. Any and All Assets of Shane Co.*, 816 F.Supp. 389, 399 (M.D.N.C. 1991).

NACCO argues that the trial court erred in granting the injunction because it misinterpreted Tennessee law. While Tennessee caselaw has not interpreted the meaning of "coercion" in Part 1304, NACCO reasons that the trial court's interpretation of "coercion" would render any mutually agreed upon Exclusivity Provision unenforceable. NACCO suggests that Tennessee legislators knew how to distinguish between an enforceable *requirement* of exclusivity and *coercion* to be exclusive, as they did in the Tennessee Beer Franchise Act and other statutes. Tenn. Code Ann. § 57-5-503; Tenn. Code Ann. § 55-17-114(c)(22)-(25). Furthermore, NACCO cites other states' statutes that draw a distinction between an enforceable contractual provision requiring dealerships

14

to be exclusive and coercion. NACCO also cites to the federal Automobile Dealers' Day in Court Act (hereinafter "ADDCA") which prohibits "coercion." 15 U.S.C. § 1221(e). Under ADDCA, it is not coercion to merely enforce a provision of a contract. *Cecil Corley Motor Co. v. Gen. Motors Corp.*, 380 F.Supp. 819, 844 (M.D. Tenn. 1974). Finally, NACCO argues that the cases cited by the trial court were inapposite to this matter. NACCO claims that the circumstances and statutory language make the cases cited by Lilly and the trial court distinguishable from the present situation, where the terms of the DMAs included an explicit Exclusivity Provision and were voluntarily agreed upon. Ultimately, NACCO argues that the Tennessee statutes do not give Lilly "an 'unwaivable right to purchase equipment from another supplier,'" but rather "an unwaivable right not be to '*coerced*' by Yale into 'refusing to purchase equipment manufactured by' Toyota."

Lilly cites the protective purposes of the 1999 amendments to Tennessee law governing retailer agreements. Tenn. Code Ann, Title 47, Chapter 25, Part 13.[5] Lilly notes that, by the terms of the DMAs, any provision which conflicts with Tennessee law is void. Lilly also cites persuasive caselaw indicating that, for similar dealer protection statutes, a manufacturer cannot terminate a dealer for acquiring and marketing merchandise from a competitor. *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 49-51 (7th Cir.1980) (holding that, under a Wisconsin statute, a manufacturer could not terminate a dealer because it also dealt in competitor's goods where there was no exclusivity agreement in the dealership contract). Lilly argues that NACCO's interpretation

---

[5] Toyota also filed briefs in all the appeals before this panel. The preliminary injunctions at issue in this appeal do not directly affect Toyota's rights. Toyota's standing to argue for a disposition of these preliminary injunctions under the Tennessee statutes is questionable. For the most part, Toyota's briefs echo Lilly's arguments. For that reason, the Court primarily address Lilly's arguments.

of the Tennessee statutes would allow manufacturers to skirt the protections set forth by the legislature by forcing retailers to agree to exclusivity provisions in non-negotiable contracts.

In response, NACCO cites a recent case defining "coercion" under Minnesota state law with factual circumstances similar to this case. *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524 (8th Cir. 2006). In *Minnesota Supply*, the Court ruled that a finding of "coercion" required a finding that the supplier wrongfully persuaded the dealer *and* that the supplier's actions had the final result that the dealer *did not* purchase equipment manufactured by a competitor of the supplier. *Id*. at 537-39. Applying this interpretation of "coercion" to the instant case, NACCO could not have improperly coerced Lilly into an exclusive relationship, because, despite NACCO's threats and legal action, Lilly did eventually purchase equipment from Toyota. Thus, the argument goes, NACCO only *attempted* to coerce Lilly, and attempted coercion is not a statutory ground for liability under Tennessee law. The *Minnesota Supply* court also reasoned that the mere presence of an exclusivity requirement in a dealership agreement does not constitute coercion and is not void. In fact, the Court held that an exclusivity requirement may be an "essential and reasonable" component of the dealership agreement and may be enforced. *Id.* at 538-39.

It is unclear exactly what the Tennessee legislature meant by "coercion" in Part 1304, and other circuits interpreting the law of other states provide this Court conflicting guidance in the statute's interpretation. Yet, "[e]very circuit court of appeals that has addressed the issue has held that coercion or intimidation must include a wrongful demand accompanied by the threat of sanctions for noncompliance." *Colonial Dodge v. Chrysler Corp*, 11 F.Supp.2d 737, 743 (D. Md. 1996) (citations omitted). While the Tennessee statute was intended to protect the rights of retailers from *unlawful* coercion, it did not protect them from the enforcement of terms they contractually agreed to follow. In this case, NACCO did not appear to coerce Lilly into signing the DMAs which

16

included the Exclusivity Provision. In theory, NACCO might have negotiated terms with Lilly which included an Exclusivity Provision and enforced those terms through a suit for breach of contract, without coercing Lilly to adopt those terms and running afoul of Tennessee law. The Court does not interpret Tennessee law to automatically void all exclusivity provisions in dealership agreements. We assume for the purposes of this appeal that the mere presence of the Exclusivity Provision does not constitute coercion and that the Exclusivity Provision is not void and is enforceable.

However, the trial court concluded that NACCO's method of enforcement, threatening to immediately sue Lilly and its officers for seemingly excessive amounts prior to any breach of the Exclusivity Provision and before any damages had been incurred, may amount to coercion in violation of the statute. We review the issue of whether the trial court correctly interpreted and applied the Tennessee statutes, as well as whether Lilly can show a likelihood of success on the merits, by a *de novo* standard. Whether NACCO engaged in unlawful coercion in its methods of enforcing the Exclusivity Provision or NACCO lawfully sought to enforce Lilly's contractual obligation is a close call. In the absence of guidance from Tennessee state courts or legislature, this Court must determine whether "coercion" under the Tennessee statute only assigns liability where the supplier *successfully* compelled the dealer not to purchase a competitor's equipment. Because interpretation of Tennessee statutes is more properly the province of Tennessee courts, we only construe the statute to the extent necessary to rule on the issue. Regardless of whether, under Tennessee law, coercion is only possible if Lilly did not purchase Toyota equipment or the trial court correctly concluded that NACCO could coerce Lilly through its enforcement of the Exclusivity Provision, we cannot determine that Lilly had absolutely no possibility for success on the merits; not all the facts are before the Court in its review of the November 23, 2004, Order. For instance,

17

the Court does not know whether Lilly postponed its negotiations with Toyota or other competing manufacturers due to NACCO's investigation into a violation of the Exclusivity Provision. Therefore, under either interpretation of "coercion" under the Tennessee statute, we cannot determine on the facts before the Court that Lilly had either no likelihood of success or a strong likelihood of success.

While Lilly has not strongly established that it will likely succeed in showing that the Exclusivity Provision is void and that Lilly has not therefore violated it, this is not an insuperable bar to preliminary injunctive relief for Lilly. The trial court correctly concluded that the potential that Lilly will suffer irreparable harm balances the possibility that Lilly might not succeed on the merits and bolsters Lilly's right to injunctive relief. *Shane Co.*, 816 F.Supp. at 399.

### B. Violation of the Best Efforts Provision

The trial court found that the Best Efforts Provisions of the DMAs did not provide good cause for NACCO to terminate Lilly's dealership. Because Yale's market share in Lilly's territory was well above the national average at the time and Lilly retained separate sales staff to market Yale's products, the trial court held that NACCO could not show that it was damaged by Lilly's position as a dealer of competitor's products.

Again, the Court must begin its inquiry of Lilly's likelihood of success with an examination of the adequacy of NACCO's notice. Although it was not included in a formal Notice of Termination, Lilly was notified of NACCO's intent to terminate the dealership agreement due to Lilly's alleged violation of the Best Efforts Provision on August 1, 2003, and again on August 5, 2003, as the trial court found. On August 1, 2003, NACCO filed an Amended Complaint with the trial court seeking a declaratory judgment of NACCO's right to terminate the DMA. The Complaint

18

specifically referred to a portion of the Best Efforts language from Article 3.14 of the DMA, stating that "Dealer shall actively develop, preserve, and promote the goodwill and reputation of Yale, its goods and services...." Article 8.14 was again referenced as a whole as a basis for termination in a letter sent to Lilly on August 5, 2003. While neither notice specifically referred to the "Best Efforts Provision" and neither referred to the portions of the Best Efforts language in Article 3.4 of the DMA, the quoted language in the August 1, 2003, Amended Complaint clearly refers to Lilly's alleged failure to exercise adequate efforts to promote Yale products in violation of the terms of the DMA. Lilly asserted that it cured any violation by bifurcating its sales staff into Yale specialized staff and Toyota specialized staff. However, this bifurcation was not completed until December, 2003, or January, 2004, well outside the sixty day cure period required by the statute, which ended at the start of October, 2003. Therefore, Lilly may not establish a likelihood of success on the merits by showing that NACCO did not give adequate notice or allow a cure of violations of the Best Efforts Provision.

NACCO argues that Lilly did not meet its burden to show that it was in compliance with the Best Efforts Provision. NACCO claims that Lilly's obligation to use its best efforts to promote Toyota products necessarily conflicts with its obligation to "actively and effectively solicit[] and promot[e Yale products] on a regular and frequent basis to all actual and potential customers." In *Joyce Beverages*, the court held that a best efforts clause was violated when a retailer attempted to sell two brands of similar soft drinks. *Joyce Beverages of New York, Inc. v. Royal Crown Cola Co.*, 555 F.Supp. 271, 275 (S.D.N.Y. 1983). The court tempered its decision by noting that "[a] best efforts clause is not *per se* breached by a mere undertaking of a competitive product line; it depends on the circumstances." *Id.* (citing *Polyglycoat Corp. v. C.P.C. Distribs.*, 534 F.Supp. 200 (S.D.N.Y. 1982)).

19

Lilly contends that, in these circumstances, it could comply with the Best Efforts clause in the DMAs while carrying competing products. Lilly points to *Reinders*, a factually similar case, where the court found that a retailer could sell competing brands while complying with a contractual best efforts provision. *Reinders*, 627 F.2d at 47. Under the circumstances of this case, Lilly might have simultaneously complied with both Toyota's and NACCO's Best Efforts Provisions. Lilly trained separate sales staff to promote Toyota and Yale products. Lilly offered both products to its entire customer base. Thus, the trial court correctly concluded, on the facts available to it at the time, that Lilly would likely prevail on the merits regarding its compliance with the Best Efforts Provisions of the DMAs.

### C. Violation of the Business Ethics Provision

The trial court did not determine whether Lilly would likely succeed on the merits regarding NACCO's claim that Lilly's violation of the Business Ethics Provision of the DMAs constituted good cause to terminate the agreement. In particular, NACCO claimed that Lilly's evasiveness and dishonesty regarding its negotiations with Toyota violated the Business Ethics Provisions of both DMAs. Again, the potential for irreparable harm to Lilly in the absence of injunctive relief guided the trial court's discretion to issue an injunction despite Lilly's questionable likelihood of success on the merits. *Shane Co.*, 816 F.Supp. at 399. Lilly also did not prove to the Court a strong likelihood of success through failure of notice. NACCO had provided Lilly notice of the alleged violation of the Business Ethics Provision in the Amended Complaint of August 1, 2003, and the letter of August 5, 2003. Lilly alleged that it cured any violation by disclosing its relationship with Toyota. This does not ensure Lilly's success however, because full disclosure after the fact does not necessarily undo the damage caused by Lilly's initial dishonesty, as the trial court found. Based on the facts before the trial court at the time of its November 23, 2004, Order, Lilly

20

had some, though perhaps not a strong, probability of success on the merits as to its compliance with the Business Ethics Provision.

### ii. Irreparable Injury to Lilly

The trial court also found that Lilly would inevitably suffer irreparable harm if it lost the right to sell Yale products and repair parts during this litigation, only to regain its Yale dealership after a trial on the merits. Specifically, the trial court determined that Lilly would be unable to maintain its Yale repair service if it could not purchase Yale parts directly from NACCO at lower prices than it could obtain the parts commercially.[6] Lilly would then lose its Yale maintenance customer base and be forced to terminate up to forty percent of its employees, repair specialists in Yale equipment. NACCO contends that Lilly has shown the potential for only economic loss. "Mere injuries, however substantial... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed. 2d 166 (1974). NACCO claims that any irreparable damages claimed by Lilly are merely speculative. Lilly must show irreparable harm that is "both certain and immediate, rather than speculative or theoretical" to satisfy its burden to receive preliminary injunctive relief. *Michigan Coalition of Radioactive Material Users, Inc. v. Greipentrog*, 945 F.2d 150, 154 (6th Cir. 1991). NACCO argues that Lilly's claims that it would lose customers and specialized employees if sales of Yale equipment is interrupted are insufficient. Some losses of goodwill to Lilly, however, seem reasonably certain. Loss of goodwill and business profits signify irreparable harm. *See, e.g., Warren v. City of Athens, Ohio*, 411 F.3d 697, 712 (6th Cir. 2005); *Engler*, 257 F.3d at 599;

---

[6] Lilly might not be able to obtain Yale parts at all if NACCO refuses to sell them directly under NACCO's new policies.

21

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 511-12 (6th Cir. 1992). Moreover, NACCO's suggestion that Lilly might avoid irreparable harm by selling Toyota products to make up the profit is without merit. *See Reinders*, 627 F.2d at 53-54. NACCO claims that all harm Lilly might suffer is purely economic, and cites numerous cases where loss of a dealership during litigation created purely economic damages. However, the trial court correctly concluded that "although Lilly could possibly be compensated with monetary damages for lost profits from the selling and servicing of Yale products, the revenue and profitability generated by employees in whom Lilly had invested could not be easily calculated or compensated with monetary relief." Therefore, the trial court did not abuse its discretion in concluding that Lilly would suffer irreparable harm if injunctive relief was not issued.

### iii. Substantial Harm to NACCO

The trial court concluded that NACCO would not suffer harm by the issuance of an injunction prohibiting it from terminating its relationship with Lilly. Particularly, NACCO claimed that it would be harmed by a continuing relationship with either Lilly's Nashville or Memphis dealerships, because Lilly would be privy to Yale's marketing strategies and might disclose that information to Yale's competitor, Toyota. Furthermore, Yale asserts that it would be harmed by being forced to remain in a contract with an untrustworthy dealer.

Lilly points out that NACCO associates with numerous dealerships that sell competitor's products, whether because the dealerships are transitioning to sell exclusively Yale products or because they have traditionally sold more than one line of products. Furthermore, NACCO's other line of forklifts, Hyster, is not generally sold exclusively to dealers. While these dealers have not contracted to sell Yale products exclusively, they logically pose the same risk to NACCO that marketing secrets would be disclosed to competitors. NACCO's claims that Lilly's dual dealing of

22

Toyota products will cause it to leak Yale marketing information and cause NACCO harm are not convincing. Therefore, the trial court did not abuse its discretion in concluding NACCO had little, if any, harm to be considered in issuing the injunction.

### iv. Policy Considerations

The trial court found that

> "The public interest may be declared in the form of a statute." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.4 (2d ed. 1995).... [T]he Tennessee legislature has declared the public interest in § 47-25-1311 that a "retailer shall be entitled to injunctive relief against unlawful termination...." Tenn. Code Ann. § 47-25-1311(b); see also *Power & Tel. Supply Co., Inc.,* 268 F.Supp.2d at 987 (stating that the court cannot conceive of a clerarer statement of a "fundamental policy of Tennessee to protect... retailers"). Because § 47-25-1311 explicitly reflects the public interest and requires a court to guard against violations of the statute, the public interest factor weighs in favor of the Lilly Company. *See Vanadium Corp. of Am.*, 203 F.Supp. at 696.

Neither party disputes the trial court's conclusion in any depth. It is clear that, at the time the November 23, 2004, Order issued, the policy factor balanced in favor of Lilly.

Policy considerations and the lack of a significant possibility of harm to NACCO weigh in favor of granting Lilly's injunction. Additionally, the trial court did not abuse its discretion in concluding that Lilly might suffer irreparable harm if injunctive relief was not granted. There is some likelihood, based on the facts before the trial court, that Lilly would succeed on the merits in this case as well, although this Court need not make a definite ruling on that matter to affirm the trial court's ruling. Therefore, the Court concludes that the trial court did not abuse its discretion in balancing the factors set forth in *Tumblebus* and granting the November 23, 2004, injunction to Lilly.

### 2. *The trial court's order on June 30, 2005, is appealable.*

23

On June 30, 2005, the trial court had not yet issued an Order disposing of Lilly's Application for a Preliminary Injunction requesting that NACCO be enjoined from refusing to renew the Memphis and Nashville DMAs when they expired by their terms on July 2, 2005. To avoid NACCO's inevitable nonrenewal if an injunction was not issued, the trial court gave the following Order.

> Given the volume of evidence introduced [at the preliminary injunction hearing], most of which is by deposition testimony, the Court must take this matter under advisement. The status quo shall be maintained as to all matters between the parties pursuant to the contract between the parties as it existed prior to July 2, 2005, the Court's Order of November 23, 2004, and otherwise, pending the Court's ruling on the matters presented at the June 1, 2005, hearing.

Lilly posits that this Order is not appealable under 28 U.S.C. § 1292(a)(1), which allows the appeal of interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." In order for this Court to have appellate jurisdiction over the interim order, NACCO must show (1) that the order had the practical effect of granting Lilly's request for injunctive relief; (2) that the order will have serious, irreparable consequences to NACCO; and (3) that the order can be effectually challenged only by immediate appeal. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981); *In re M.T.G., Inc. v. Vining*, 403 F.3d 410, 413 (6th Cir. 2005).

NACCO contends, and Lilly does not seriously dispute, that the June 30, 2005, Order granted Lilly injunctive relief. By purporting to maintain the status quo, the trial court enjoined NACCO from refusing to renew Lilly's dealership agreements between July 2, 2005, and October 17, 2005, when the trial court's Order on the preliminary injunction was issued. Had the trial court not issued its June 30 Order, NACCO would have been free not to renew Lilly's contract on the purported basis of "good cause" as litigation progressed. Since the Order has the effect of an injunction prohibiting

24

NACCO from nonrenewal, it may be considered under the same standards as other injunctive relief.

NACCO then shows that the June 30, 2005, Order may have serious, irreparable consequences for NACCO. NACCO sets forth the possibility that continued association with a dealer who may be dishonest could endanger NACCO's private product marketing and pricing information. NACCO cannot be sure that Lilly would not act dishonestly in the future or disclose NACCO's internal marketing strategies to Toyota, its competitor. These disclosures or potential dishonest acts by Lilly certainly could cause some irreparable harm to NACCO during the time NACCO's nonrenewal of Lilly's DMAs was delayed.

Lilly then argues that NACCO cannot appeal the June 30, 2005, Order because NACCO "has failed to show that the Order can only be effectively challenged by immediate appeal." *See Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). *Switzerland Cheese* is inapplicable to this matter. That case involved the attempted pretrial appeal of the denial of a summary judgment motion seeking a permanent injunction, under the guise that it was an appealable denial of an interlocutory injunction. The Supreme Court distinguished the facts of that case from preliminary injunction considerations. *Id.* Therefore, *Switzerland Cheese* does not apply here. The June 30, 2005, Order could only be effectively challenged through immediate appeal. If immediate harm was inflicted on NACCO by the improper imposition of injunctive relief, only an immediate appeal could address the harm which occurred before the preliminary injunction was finalized and a trial on the merits was conducted. The June 30, 2005, Order is appealable interlocutory relief under the ambit of 28 U.S.C. § 1292(a)(1).

*3.        The trial court abused its discretion in issuing an Order on June 30, 2005, preserving the parties' contractual relationship under the DMAs until the court decided Lilly's application for a preliminary injunction when it did not issue any findings of fact, conclusions of law, or explicit consideration of the standards for injunctive relief.*

NACCO argues on appeal that the trial court did not properly follow the mandates of Federal Rules of Civil Procedure in issuing its June 30, 2005, Order.  Rule 65(d) states

> Every order granting an injunction... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained....

Fed. R. Civ. P. 56(d).

Rule 52(a) states that "in granting... interlocutory injunctions the court shall... set forth the findings of fact and conclusions of law which constitute the grounds of its action."  Fed. R. Civ. P. 52(a). "The requirements of Rule 52(a) are intended to assure that the district court gives appropriate consideration to all essential relevant factors and provides an adequate basis for meaningful appellate review of its decision." *Ford Motor Co. v. Lloyd Design Corp.*, 200 Fed. Appx. 464, 467 (6th Cir. 2001) (quoting *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir. 1996)).  *See also Gonzales v. Galvin*, 151 F.3d 526, 531-32 (6th Cir. 1998); *Hypoint Tech., Inc. v. Hewlett-Packard Co.*, No. 99-3237, 1989 WL 20560, at *2 (6th Cir. Feb. 21, 1989); *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Inverness Corp. v. Whitehall Labs.*, 819 F.2d 48, 50 (2nd Cir. 1987) (all emphasizing the importance of Rule 52(a) to appellate review).  This panel reviews *de novo* whether the trial court properly complied with procedural rules. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 583 (6th Cir. 2004).

26

In this case, the district court made no findings of fact or conclusions of law and failed entirely to consider the required preliminary injunction standard. Injunctive relief may be vacated where the trial court states no support for it. *Weitzman v. Stein*, 897 F.2d 653, 658 (2nd Cir. 1990); *Glover,* 855 F.2d at 284. In an analogous situation, this Court vacated an order staying further advancement of a case while the court took injunctive issues under advisement. *Winzeler Excavating Co. v. Brock*, No. 87-3003, 1987 WL 39061 (6th Cir. Nov. 24, 1987). As in this case, the Court held that the Order operated in effect as an injunction without the proper findings of fact and conclusions of law. Because the Order was in violation of the Federal Rules of Civil Procedure, the Court vacated the Order. *Id.*

Lilly points out that the trial court issued the June 30, 2005, Order because it required additional time to decide upon findings of fact and conclusions of law. According to Lilly, since the trial court had already established that injunctive relief was proper for Lilly's first injunction, findings of fact and conclusions of law were not necessary for the June 30, 2005, Order. Finally, Lilly concludes that because the trial court did not intend for the June 30, 2005, Order to operate as injunctive relief, it is not subject to Rules 52(a) and 65(d).

The trial court erred in granting the June 30, 2005, Order without adding findings of fact and conclusions of law. The Order constituted injunctive relief, prohibiting the nonrenewal of the Nashville and Memphis DMAs beyond their set dates of expiration. Furthermore, the trial court's reasoning in extending the contracts was not so clear as to obviate findings of fact and conclusions of law. The court's views on preliminary relief prohibiting nonrenewal ultimately differed from the reasoning in the November 23, 2004, Order, so the prior Order's findings of fact and conclusions of law could not merely be absorbed into this Order as well. Therefore, the June 30, 2005, Order was improperly granted.

27

*4.      The appeal of the trial court's Order on June 30, 2005, is not moot although that Order has been superseded by the trial court's Order of October 17, 2005.*

Lilly argues that any consideration of NACCO's appeal of the June 30, 2005, Order is improper at this time because the Order has been superseded by the trial court's disposition on the merits of the preliminary injunction. A federal court may not render a decision upon moot questions or declare rules of law that cannot affect the matter at issue. *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005). An appeal is moot if the court is not in the position to grant any effectual relief whatsoever. *Chirco v. Gateway Oaks, Inc.*, 384 F.3d 307, 308-09 (6th Cir. 2004); *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.,* 365 F.3d 435, 458 (6th Cir. 2004); *Morrison v. Circuit City Stores,* Inc., 317 F.3d 646,656 n.2 (6th Cir. 2003); *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).

While the passage of time and entry of the October 17, 2005, Order make it impossible for this panel to effectively alter the terms of the June 30, 2005, injunction, effective relief is still available. In the October 17, 2005, Order, the trial court determined that NACCO had the right to refuse to renew Lilly's Memphis DMA on July 2, 2005. Injuries NACCO suffered from its continued contractual relationship with Lilly between July 2, 2005, and October 17, 2005, are potentially recoverable. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. LaSalle Mach. Tool, Inc.*, 696 F.2d 452, 458-59 (6th Cir. 1982) (declaring that an appeal of an expired injunction was not moot when damages resulting from the injunction had not been determined). *See also Liner v. Jafco*, *Inc.*, 375 U.S. 301, 305-06 (1964); *United Food & Commercial Workers Local No. 880 v. Cozzoli Sparkle Mkt., Inc.*, No. 87-3946, 1988 WL 12220, at *1 (6th Cir. Feb. 16, 1988) (remanding an expired temporary restraining order to the district court

28

to assess damages occasioned by the improper injunctive relief). Thus, the panel's vacation and remand of the improper June 30, 2005, injunction does grant effective relief, and the appeal of the June 30, 2005, injunction is not moot.

5.    *The trial court did not abuse its discretion in issuing an Order on October 17, 2005, granting injunctive relief prohibiting NACCO from refusing to renew its DMA granting Lilly dealership rights in the Nashville area.*

The trial court issued an Order on October 17, 2005, granting Lilly a preliminary injunction prohibiting NACCO's nonrenewal of the Nashville DMA and allowing NACCO's nonrenewal of the Memphis DMA. The applicable standard of review for this preliminary injunction is identical to that applied to the November 23, 2004, preliminary injunction in this case. The relevant facts for the trial court to consider in its decision whether to enjoin NACCO from refusing to renew the Nashville and Memphis DMAs include all the factors relevant to the trial court's decision whether to issue the November 23, 2004, preliminary injunction. During the continued litigation, however, further relevant facts came to light.

After the issuance of the November 23, 2004, preliminary injunction, NACCO discovered at least two other instances of Lilly's potential breach of the Business Ethics Provisions of the DMAs. In 1992, Lilly began selling Yale parts to a company in Monterey, Mexico. This sale was in contravention of the terms of its contract at the time. NACCO requested that Lilly cease making sales to Mexico. Lilly consistently represented to NACCO that it had stopped making sales to the Mexico plant; however, discovery revealed that Lilly was clandestinely involved in these sales until at least April 18, 2005. Also, NACCO discovered that Lilly had collected a sales incentive award

29

in 2004 for sales of one hundred forklifts to AutoZone which sales were never made. NACCO maintains that Lilly's dishonesty on these matters constitutes further breaches of the Business Ethics Provisions of both the Memphis and Nashville DMAs.

After NACCO filed Nonrenewal Notices, Lilly also signed a dealership contract to sell Clark, Linde, and Daewoo forklifts in competition with its Yale line. The new dealership would operate in the Knoxville, Tennessee area, and would violate the Exclusivity Provisions of the both the Memphis and Nashville DMAs if they were found to be valid. NACCO also asserts that Lilly's activities marketing the competing brands would prevent it from complying with the Best Efforts Provisions in the DMAs.

i.      *Lilly's Likelihood of Success on the Merits*

A.      *Exclusivity Provision*

NACCO claims that Lilly's choice to deal products from four competitors of Yale blatantly violates the Exclusivity Provisions of both the Nashville and the Memphis DMAs. In particular, NACCO notes that the DMAs' Exclusivity Provisions do not contain a territorial limit; in other words, even if Lilly were to only violate the Exclusivity Provision through activities at its Memphis location, the Nashville DMA would also be breached by Lilly's disloyalty. In ruling on this matter, the trial court found that any violation of the Exclusivity Provisions did not constitute good cause, because NACCO "coerced" Lilly to adopt the Exclusivity Provisions in violation of Tennessee law.

While the trial court ruling that NACCO attempted to coerce Lilly to sell exclusively Yale products at the time of the November 23, 2004, Order was based on articulated facts, Lilly has presented no evidence that NACCO attempted to coerce it not to deal in Clark, Linde, or Daewoo products. Rather, NACCO merely filed a nonrenewal notice in response to Lilly's decision to deal in competitor's products. Assuming that NACCO's Exclusivity Provision was not void at the outset

30

due to coercion, the mere enforcement of that Provision would constitute good cause for nonrenewal of the Nashville DMA. The difference of opinion from the trial court's Order of October 17, 2005, however, does not mandate a ruling that the trial court abused its discretion in balancing the preliminary injunction factors.

B. *The Best Efforts Provision*

Between the trial court's considerations of Lilly's compliance with the Best Efforts Provision in November, 2004, and October, 2005, Lilly's market share of Yale product sales varied dramatically. While the parties disagree on the exact status of Lilly's market share, NACCO argued that any drops in sales resulted from Lilly's diverted efforts to selling Toyota products. Lilly blamed NACCO for the lowered sales, claiming NACCO had provided Lilly with little marketing information and insufficient products to fulfill orders. The trial court found that Lilly could not show with a strong likelihood of success that it had complied with the Best Efforts Provision in the Memphis DMA. Lilly's Memphis sales of Yale products had suffered dramatically since it started dealing in Toyota products as well. The changed circumstances show that Lilly's delayed bifurcation of its sales force and zealous promotion of Toyota products interfered with its ability to use its best efforts to promote Yale products at its Memphis location. However, the trial court found that Lilly could show a strong likelihood of success regarding its compliance with the Nashville DMA Best Efforts Provision. Lilly's market share of Yale sales was sufficient, and NACCO presented no evidence that Lilly sold competing brands at that location. The trial court also dismissed NACCO's argument that the breach of the Memphis DMA Best Efforts Provision tainted Lilly's compliance with the Nashville DMA Best Efforts Provision, since the Best Efforts Provisions specific to the location were set out in the DMA. No error is apparent in the trial court's decision that Lilly complied with the Nashville DMA Best Efforts Provision.

31

C. *The Business Ethics Provision*

The trial court found that Lilly had not shown a strong likelihood of success regarding NACCO's claims that Lilly violated the Business Ethics Provisions of both the Nashville and Memphis DMAs. According to the trial court, Lilly had almost certainly violated the Memphis DMA Business Ethics Provision in its misleading behavior during its negotiations with Toyota. The trial court also found that "[t]he clause deals with honesty, and it is logical to conclude that [violations of the Business Ethics Provision] cannot be limited to location but instead extend to all relationships to which Lilly and [NACCO] are a part."

In finding that Lilly had likely violated the Business Ethics Provisions of both the Nashville and Memphis DMAs, the trial court established that NACCO might show good cause for nonrenewal of both and that Lilly was unlikely to succeed on the merits of this action. NACCO contends that, since Lilly cannot show likely success on the merits regarding the terms of the Nashville DMA, the trial court's grant of injunctive relief was improper. While "a finding that there is simply no likelihood of success on the merits is usually fatal," that is not the case here. *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). The trial court found that, while Lilly had little likelihood of success on the merits regarding its breach of the Nashville DMA, there may have been some likelihood of success. Since no factor is determinative in a preliminary injunction ruling, Lilly's likelihood of success, or lack thereof, is merely balanced with the other factors.

ii. *Lilly's Irreparable Harm if an Injunction is Not Issued*

The trial court found that, based on the same analysis used in its November 23, 2004, Order, Lilly would suffer irreparable harm at both its Memphis and Nashville locations if a preliminary injunction prohibiting nonrenewal was not issued. The trial court concluded, however, that the

32

Memphis dealership was less likely to suffer severe irreparable harm because many of its workers were already employed in selling Toyota products. Thus, the Memphis dealership was less likely than the Nashville dealership to be put out of business by the loss of Yale's line of products.

Regarding Lilly's irreparable harm if an injunction is not issued, NACCO merely echos its arguments set forth in the appeal of the November 23, 2004, Order. Again, and for the same reasons as discussed above, these arguments fail. The trial court did not abuse its discretion in finding that Lilly has demonstrated that it would suffer irreparable harm if NACCO refuses to renew its dealerships during the pendency of this litigation.

### iii. Harm to NACCO if the Injunction Is Issued

The trial court determined that NACCO has shown it would suffer little harm from its continued relationship with Lilly's dealerships during the pendency of the litigation. Instead, Lilly has shown that NACCO has disclosed its marketing strategies to other dealers who also sell competing brands and has suffered no harm. As in the trial court's November 23, 2004, Order, NACCO failed to tip the scales by showing it would be harmed by the imposition of a preliminary injunction allowing Lilly to continue selling Yale products. Again, NACCO restates the protests it first voiced in its appeal of the November 23, 2004, Order - that NACCO is harmed by being forced to continue a relationship with a dishonest dealer who could disclose NACCO's confidential business information to competitors. In light of NACCO's contracts with other dealers who also sell Yale's competitors' products, the argument that NACCO is harmed by potential leaks of information to competitors holds little water. NACCO also argues that it suffers a "great hardship" by being forced to remain "frozen into an intimate and continuous relationship with a dealer it no longer wishes to be associated with." *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 392 (7th Cir. 1984) (quoting *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 764

33

(2nd Cir. 1979)).  This harm, if any, was balanced against the other preliminary injunction factors in a proper exercise of the trial court's discretion.

*iv.  Policy Considerations*

Repeating its analysis under the November 23, 2004, injunction, the trial court determined that the stated policy of the applicable Tennessee statutes was to protect dealers through injunctive relief from opportunistic manufacturers. *See* Tenn. Code Ann. § 47-25-1311.  The trial court again concluded that public policy favored granting injunctions to protect Lilly's, the dealer's, legitimate rights.  NACCO objects that the Tennessee statutes only protect against unlawful provisions in dealer contracts and that public policy supports the enforcement of valid contractual terms.  The trial court properly considered both of these arguments in weighing the preliminary injunction factors.

The trial court did not abuse its discretion in balancing the preliminary injunction factors as to the Nashville DMA.  While Lilly showed a low likelihood of success on the merits because of a probable violation of the Business Ethics Provision, Lilly also showed a strong risk of irreparable harm if the injunction was not issued.  Since NACCO did not convincingly demonstrate that it would be seriously harmed by the preliminary injunction prohibiting nonrenewal of the Nashville DMA, and policy considerations also favor Lilly, the trial court was within the bounds of its discretion in granting Lilly a preliminary injunction prohibiting NACCO from refusing to renew the Nashville DMA during the pendency of this litigation.

*6.      The trial court did not abuse its discretion in issuing an Order on October 17, 2005, denying injunctive relief prohibiting NACCO from refusing to renew its DMA granting Lilly dealership rights in the Memphis area.*

Lilly asserts that the trial court abused its discretion in denying Lilly's requested preliminary injunction and allowing NACCO to refuse to renew the Memphis DMA in its Order of October 17,

34

2005. Specifically, the trial court found that Lilly had a very low likelihood of success on the merits regarding its compliance with the Memphis DMA because of alleged breaches of the Best Efforts and Business Ethics Provisions. Lilly was likely to suffer less irreparable harm from a loss of Yale products at that dealership, since it already had employed some staff in sales of Toyota products. NACCO had arguably suffered some harm, in the form of lowered market shares, from Lilly's representation of a competing dealer at the Memphis location. Also, since NACCO posited several lawful reasons it might refuse to renew Lilly's Memphis DMA, public policy would not support preventing NACCO from enforcing its rights. Lilly argues that it had a high likelihood of success, which favorably altered the trial court's balance of the preliminary injunction factors.

Lilly insists that the sole reason for nonrenewal of the Memphis DMA is Lilly's breach of the Exclusivity Provision. Since the Exclusivity Provision had been found unenforceable in the trial court's November 23, 2004, Order, Lilly contends that there is no valid reason for nonrenewal. As discussed above, the trial court properly based its decision on NACCO's other purported reasons for nonrenewal: Lilly's breaches of the Memphis DMA's Business Ethics and Best Efforts Provisions.

In its argument that it did not violate the Best Efforts or Business Ethics Provisions of the Memphis DMA, Lilly sets forth similar arguments to those that succeeded in its application for the November 23, 2004, preliminary injunction. Significantly, Lilly does not address the changed circumstances at the time of the October 17, 2005, Order: that NACCO had discovered incidents of dishonesty involving Lilly's sale of parts outside its sales area to Mexico, and that Lilly had collected a sales incentive award, though it never made the underlying sales. In light of NACCO's discovery of additional violations and changed circumstances, the trial court correctly found that

35

Lilly had a low likelihood of success on the merits in showing that it fully complied with the Memphis DMA.

Lilly then argues that NACCO did not properly give Lilly notice and an opportunity to cure any defaults under the Memphis DMA before nonrenewal. In particular, Lilly claims it was not provided sixty days to cure any alleged deficiency to void any notice of nonrenewal. Tenn. Code Ann. § 47-25-1302(b). As discussed above, Lilly was entitled to notice of any violations of the DMAs and sixty days to cure those violations. Lilly was given notice of the violations well before the November 16, 2004, Nonrenewal Notices were issued. Lilly was first notified that NACCO intended to terminate DMAs through letters and the filing of a Complaint in July and early August, 2003. While these documents specifically notified Lilly that NACCO sought to *terminate the DMAs before the terms expired*, and did not refer to NACCO's *refusal to renew* the DMAs at their expiration, Lilly was fairly on notice that NACCO sought to end its relationship with Lilly at the earliest possible date. As explained above, the trial court properly found that Lilly was on notice of alleged violations of the Best Efforts, Exclusivity, and Business Ethics Provisions of the DMAs. Lilly's attempts to cure were either inadequate or untimely. NACCO argues that Lilly's breach of the Business Ethics Provision is simply incurable; NACCO will always feel that it is dealing with a dishonest retailer because of Lilly's prior dishonest acts. Furthermore, NACCO shows that, while Lilly attempted to cure a violation of the Best Efforts Provision by bifurcating its sales staff, the cure was too little and too late. The sales staff was never fully bifurcated, and sales personnel were not divided until December, 2003, or January, 2004, well more than sixty days from NACCO's first notice of a violation of the Best Efforts Provision on August 5, 2003. Therefore, Lilly did not effectively cure its breach of the Best Efforts and Business Ethics Provisions of the Memphis DMA.

36

Thus, the trial court properly found that Lilly cannot ensure a likelihood of success on the merits based on NACCO's failure to give notice or make a successful and timely cure.

Lilly has not shown any error in the trial court's determination of its likelihood of success on the merits. Furthermore, Lilly has not shown that the trial court abused its discretion in balancing the factors determining whether Lilly was entitled to a preliminary injunction prohibiting the nonrenewal of its Memphis DMA. Therefore, the trial court's denial of injunctive relief to Lilly in it October 17, 2005, Order was proper.

7. *The trial court committed reversible error in failing to consider NACCO's request for bond to accompany its preliminary Orders prohibiting NACCO from terminating or refusing to renew its DMAs for Lilly's Nashville or Memphis dealerships.*

NACCO moved the trial court to require a bond from Lilly shortly after injunctive relief was issued on November 23, 2004. Lilly filed an opposition. In its subsequent Orders, including the Orders of June 30, 2005, and October 17, 2005, granting injunctive relief, the trial court failed to consider the bond request.[7]

Under Rule 65(c),

---

[7] Lilly contends that NACCO waived its right to consideration of a bond by failing to repeatedly mention the ripe motion for bond pending before the court. NACCO did raise the issue at the trial level by filing a motion for bond. Repeated motions for bond are not necessary to preserve NACCO's claim.

Lilly also argues that the trial court did consider the issue of bond in this case. NACCO raised the issue at the June 1, 2005, hearing. At that time, the trial court indicated it would not consider bond until injunctive relief had been granted and welcomed NACCO to file a motion for bond. NACCO already had a motion for bond filed with the court, and did not pursue the matter further. The transcript makes it clear that the court had not considered the bond motion nor the bond requirement. An invitation to NACCO to move for bond does not satisfy the court's obligation to consider NACCO's request for bond.

37

> [n]o... preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).

Contrary to the strong language of Rule 65(c), this Court has found that a court has no mandatory duty to impose a bond as a condition for issuance of injunctive relief. *Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978). *See also Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). However, a district court errs when it "fail[s] to... expressly consider[] the question of requiring a bond" when the issue has been raised. *Roth*, 583 F.2d at 539. To protect NACCO's rights in the event that the trial court's June 30, 2005, and October 17, 2005, injunction prohibiting the nonrenewal of the Nashville DMA is overturned upon a disposition on the merits, a bond should properly be considered by the trial court. The Court remands this issue for hearing by the trial court.

**CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the trial court's Preliminary Injunction of November 23, 2004. The trial court's Order of October 17, 2005, granting and denying in parts Lilly's request for a Preliminary Injunction is also AFFIRMED. Unresolved issues regarding possible damages to NACCO flowing from the June 30, 2005, injunction prohibiting the nonrenewal of the Memphis DMA and the possible imposition of a bond accompanying the June 30, 2005, and October 17, 2005, injunctions prohibiting the nonrenewal of the Nashville DMA are REMANDED for consideration by the trial court.